**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUXCO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14-cv-349 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JIM BEAM BRANDS CO., | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Luxco, Inc. ("Luxco"), by and through its undersigned attorneys, for its First

Amended Complaint against defendant Jim Beam Brands Co. ("Beam" or "Defendant"), alleges

as follows:

## INTRODUCTION

1.      This is an action for breach of express representations and warranties, including

intentional misstatements, related to Defendant's offer, sale, and transfer of certain assets to

Luxco by way of an Asset Purchase Agreement dated January 18, 2013 (the "APA").  In the

APA, Luxco bargained for representations and warranties from the Defendants. The warranties

insured that Luxco would be made whole in the event that warranted information proved to be

incorrect either at the time made or as of the closing date. The warranties insured that Luxco had

all the information it needed to fairly assess the existing risks of the transaction. Luxco knew that

if the Defendant provided a warranty, Defendant was assuming the risk if the warranty was

untrue.  The warranties gave Luxco comfort that it could set a purchase price based on

information that was true, complete and accurate in all material respects at the time of the sale.

Defendant breached several of the warranties, and Luxco consequently agreed to a much higher purchase price than it would have considered had it known the truth.

## THE PARTIES

2.     Luxco is a corporation organized and existing under the laws of the State of Missouri and whose principal place of business is located at 1000 Clark Avenue, St. Louis, Missouri 63102.

3.     Upon information and belief, defendant Jim Beam Brands Co. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 510 Lake Cook Road, Deerfield, Illinois 60015.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Furthermore, the Court has personal jurisdiction over the parties pursuant to an express agreement to consent to the jurisdiction of any federal court located in Chicago, Illinois as set forth in Section 10.9 of the APA.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District.  Furthermore, venue is proper in this District pursuant to an express agreement for this venue as set forth in Section 10.9 of the APA.

## COUNT I:  BREACH OF CONTRACT
### (APA Section 3.14)

6.      Luxco restates and incorporates the allegations contained in Paragraphs 1 through 5 of this Complaint as if fully set forth herein.

7.      Beginning in early 2012, Luxco and Beam entered into negotiations for the sale of certain intellectual property and other assets ("Acquired Assets") by Beam to Luxco, including the exclusive right to sell certain brands of alcoholic beverages identified within the APA (the "Acquired Brands").

8.      On January 18, 2013, Luxco and Defendant entered into the APA for the sale of the Acquired Assets by Defendant to Luxco in exchange for valuable consideration.  As part of the sale, Luxco purchased certain representations and warranties set forth in Article III of the APA.

9.      The APA closed on January 31, 2013.

10.      Section 3.11 of the APA provided that the list of persons for "Knowledge of the Seller" under Section 9.1 "have received the representations and warranties of the Seller hereunder."  In Section 9.1, "Knowledge of the Seller" was defined to mean actual knowledge after the performance of reasonable due inquiry of records and each named individual's direct reports and predecessors likely to have knowledge of relevant matters for the transaction.  In Section 9.1, Defendant identified William Newlands, Nicholas Fink, John Lee, Kevin Cooke, Maria Martin and David Hunter as individuals with this obligation and to act as those with Knowledge of the Seller.  Those individuals were charged with gathering true, complete and accurate information known to Defendant, or available to it upon reasonable inquiry to others as set forth in Section 9.1, in response to Luxco due diligence requests, including true, complete

and accurate information supporting the representations and warranties provide by Defendant to Luxco in the APA.

11.    In November 2012, Defendant prepared and provided to Luxco a Brand Detail Sheet that contained Defendant's data on shipments of cases, net sales, gross profits, brand investment and brand contribution for each of the Acquired Brands. It formed the basis of the parties' calculation of the purchase price, was the document relied upon for communications and negotiations between the parties' during the due diligence period, and was the basis for Schedule 3.14 in the APA.

12.    On or about November 18, 2012, Donn Lux on behalf of Luxco forwarded an electronic letter to Defendant, including Nicholas Fink and John Lee, providing, among other things, a term sheet that led to the APA as well as a list of due diligence items.

13.    In the term sheet, the parties' agreed to a calculation of the purchase price for the Acquired Brands based upon a multiple of the net profit derived from the number of cases sold of the Acquired Brands as provided by Defendant in a Brand Detail Sheet referenced above.

14.    In the list of due diligence items, Luxco made multiple requests, including but not limited to the following:

- Retail account incentives/programs by brand by retailers by distributor.

- Retail or on-premises coop programs by SKU by customer- (ex. Buy one case Red Stag get Wolfschmidt liters free).

- On and off premises National Account/Chain authorizations by SKU by chain by state.

- On and off-premises National Account/Chain authorizations in jeopardy by chain by SKU by state.

- On and off-premises National Account/Chain support agreements by SKU by chain by state.

15.     Luxco provided additional requests for information to Defendant during the due diligence period, including requests regarding how the Acquired Brands were included in any "national-level Beam incentives."

16.     Defendant provided responses to Luxco on the diligence requests periodically from November 2012 until closing.  In some cases, the responses were incomplete; in other cases, Beam refused to provide a response.  Defendant's responses and, in some cases, refusal to respond, triggered Luxco's demand for certain representations and warranties to close on the APA.

17.     By way of example, and not intending to be a full and complete recitation of the facts regarding due diligence matters, on or about December 12, 2012, Defendant through its employee Amy Flanagan, provided to Luxco a report on all due diligence requests submitted by Luxco, on a request-by-request basis, including Defendant's suggested status of the due diligence request, where in the data room for the deal relevant information could be found, and Defendant's notes and comments relating to the requests.

18.     In its December 12, 2012 report, Defendant advised Luxco, among other things, that "Beam has no national account programs" for the Acquired Brands, that Defendant would not provide Luxco requested information relating to National Accounts or Chain authorizations in jeopardy, and that Defendant does not provide incentives or "BI [Brand Investment] dollars" for the Acquired Brands.  For each of these items, Defendant identified the status of Luxco's requests as "closed."

19.     Defendant attached to and included in the APA a brand schedule ("Schedule 3.14") derived from the original Brand Detail Sheet provided in November 2012 purporting to list information with respect to the Acquired Assets, including the number of shipment cases and net sales of each of the Acquired Brands.

20.     In Section 3.14 of the APA, Defendant represented and warranted that the information contained in the Schedule 3.14 was "true, complete and accurate in all material respects."  As a material aspect of the APA, Luxco purchased this warranty and representation from Defendant which placed upon Defendant the duty to, among other things, provide Luxco with sufficient information and detail to make the information in Schedule 3.14 "true, complete and accurate in all material respects."

21.     Luxco reasonably relied on the representation and warranty that the information provided in Schedule 3.14 was "true, accurate and complete in all material respects."

22.     On or about January 25, 2013, just a few business days before the APA was set to close, Donn Lux sent to Defendant's President of North America, William Newlands, an e-mail questioning whether Defendant had provided true, accurate and complete information relating to its investments in the Acquired Brands.  In response, Defendant advised Luxco that all incentives Defendant provided specifically for the Acquired Brands had been accounted for in the Brand Detail Sheet provided in November 2012.

23.     The information provided by Defendant in Schedule 3.14 was not, in fact, true, complete and accurate in all material respects.  As such, Defendant breached the representation and warranty found at paragraph 3.14 of the APA.

24.     Specifically, Defendant did not state or otherwise provide information to Luxco that the total numbers of cases of products sold under the Acquired Brands over the periods listed

6

on the schedule were contingent upon and directly tied to sales of other Beam brands that were

not the subject of the APA (the "Non-Acquired Brands").  In fact, Defendant's various incentive

programs, including its Brand Investment Programs, were calculated to generate increased sales

of Beam's Non-Acquired Brands (its premium brands) through give-away and discount

programs involving the Acquired Brands.  Thus, a substantial portion of the reported sales of

Acquired Brands solely occurred because of Beam's incentives paid to dealers for sales of the

Non-Acquired Brands.  A substantial portion of the Acquired Brands, notably

WOLFSCHMIDT® vodka and BELLOWS® vodka were given away by dealers to enhance their

sales of the Non-Acquired Brands, thereby assuring significant incentive payments from Beam.

Failure to make that disclosure was a material omission required to make the representation and

warranty of section 3.14 and its related schedule true, complete and accurate in all material

respects.

      25.     Further, Defendant Beam failed to advise Luxco that the Acquired Brands were

not stand-alone products as represented in Schedule 3.14.

      26.     The payments or credits provided by Defendant to its dealers were driven by

dealer sales of Beam Non-Acquired Brands, not the Acquired Brands.  But for those marketing

programs, the true sales numbers of the Acquired Brands would have been significantly less,

resulting in a significantly lower purchase price paid by Luxco for the Acquired Brands. In order

to make the information of Schedule 3.14 true, complete and accurate in all material respects,

Defendant was obligated to fully disclose how the Brand Incentive Programs for Beam's entire

brand array, directly affected the reported sales of Acquired Brands.  Those Brand Incentive

Programs included the "Equity Grant Program" and "Champions Club Program," among others.

27.     Despite Luxco's efforts to independently determine the accuracy and completeness of the materials provided in Schedule 3.14, it was unable to uncover the extent to which the Beam Brand Incentive Programs, including the Equity Grant Program, Champions Club Program and other marketing programs impacted the historical sales of the Acquired Brands.

28.     In addition, Section 6.1(a) of the APA contains a statement by Beam that the representations and warranties made by Beam in Article III of the APA were true and correct in all respects at and as of the closing date.

29.     In support of its statements in Section 6.1(a), as reflected by Section 6.1(c) of the APA, Beam provided Luxco with a certificate that its representations and warranties it made to Luxco in Article III of the APA were "true and correct" as of the closing date.

30.     Luxco has performed all of its obligations with respect to the APA.

31.     Because the representations and warranties contained in the Sections 3.14, 6.1(a), and 6.1(c) of the APA, as well as the information contained in Schedule 3.14, were not true, complete and accurate in all material respects as explicitly represented by Defendant, Defendant breached its contract with Luxco.

32.     As a result of its reliance on the representations and warranty provide by Defendant in paragraph 3.14 of the APA and its related schedule, Luxco was damaged in an amount in excess of $75,000.00.


## COUNT II:  BREACH OF CONTRACT
### (APA Section 3.13)

33.     Luxco restates and incorporates the allegations contained in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

8

34.     In paragraph 3.13 of the APA, Beam represented and warranted that "[f]rom November 16, 2012 . . . there has been no Material Adverse Effect" in Defendant's business relating to the Acquired Brands.  As a material aspect of the APA, Luxco purchased this warranty and representation from Defendant which placed upon Defendant the duty, among other things, to advise of and disclose any Material Adverse Effect relating to the business of the Acquired Brands to Luxco that occurred or became known to Defendant during the relevant period.

35.     Paragraph 9.1 of the APA defined "Material Adverse Effect" as "any change, effect, event, occurrence or state of facts that, taken individually or together with all other changes, effects, occurrence or state of facts, would be materially adverse to the operations, results of operation or condition (financial or otherwise) of the business of the Seller related to the sale of the Products or the brands related to the Products, in each case, taken as a whole; provided, however, Material Adverse Effect shall not include (i) any changes in general economic conditions, (ii) any changes, effects, events, occurrences or state of facts that generally affect the distilled beverage industry that do not disproportionately affect the Products or (iii) any acts of terrorism or acts of war that do not disproportionately affect the Products."

36.     Luxco reasonably relied on the representation and warranty of section 3.13 that there had been no material adverse effect with respect to the business of the Acquired Brands during the relevant period.

37.     On information and belief, on or after November 16, 2012, and before closing, a Material Adverse Effect as defined in the APA occurred relating to the Acquired Brands, due to one or more national retail accounts providing Defendant notice and information that those retail purchasers of product sold under certain of the Acquired Brands intended to cease such

purchases. Beam's failure to make that disclosure in paragraph 3.13 was a material omission, rendering paragraph 3.13 to be an intentional misstatement of material fact.

38.     Prior to the parties' execution of the APA, Defendant had elected to reformulate certain of its straight vodka brands to vodka liqueur, including, without limitation, the Acquired Brands WOLFSCHMIDT® vodka, BELLOWS® vodka, and DARK EYES® vodka.

39.     Defendant had begun the WOLFSCHMIDT brand reformulation to vodka liqueur in 2012.  Defendant disclosed to Luxco that the WOLFSCHMIDT brand had been reformulated.  However, Defendant did not disclose that certain key retail accounts for the Acquired Brands, such as Publix and Safeway grocery stores, had advised Defendant and its dealers that they would no longer be buying any Acquired Brands that had been reformulated to vodka liqueur.  Defendant's failure to provide such information to Luxco breached Defendant's obligations under section 3.13 of the APA.

40.     In fact, Defendant Beam stated that its research indicated no adverse impact on vodka sales based upon reformulation to vodka liqueur, and further stated in the original term sheet that profits from vodka liqueur sales were increasing materially as a result of the conversion program.  The term sheet stated that a premium was required to be paid by Luxco as a result of the profit increase arising from the reformulation project.  Whereas, Beam was receiving significant pushback from distributors in certain areas of the United States that were indicating they were unwilling to purchase and sell vodka liqueur products included in the Acquired Brands.

41.     In addition, Section 6.1(a) of the APA contains a statement by Beam that the representations and warranties made by Beam in Article III of the APA were true and correct in all respects at and as of the closing date.

42.     In support of its statements in Section 6.1(a), as reflected by Section 6.1(c) of the APA, Beam provided Luxco with a certificate that its representations and warranties it made to Luxco in Article III of the APA were "true and correct" as of the closing date.

43.     Luxco has performed all of its obligations with respect to the APA.

44.     Because the representations and warranties contained in the Sections 3.13 and/or 3.14, 6.1(a), and 6.1(c) of the APA, as well as the information contained in Schedule 3.14, were not true, complete and accurate as explicitly represented by Beam, Beam breached its contract with Luxco.

45.     Because Defendant did not fulfill its obligations set forth in the representations and warranties contained in the Sections 3.13, 6.1(a), and 6.1(c) of the APA, Defendant breached those provisions of the APA.

46.     As a result of its reliance on the representations and warranty provide by Defendant in paragraph 3.14 of the APA and its related schedule, Luxco was damaged in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff Luxco, Inc. respectfully prays that the Court enter judgment in its favor and against Defendant Jim Beam Brands, Co. and award Luxco damages in an amount exceeding $75,000.00 to be determined by the fact finder, and for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Luxco demands a trial by jury on all claims as to which a jury trial may be had.

Dated:  April 21, 2014

HUSCH BLACKWELL LLP

/s/ Michael R. Annis
Michael R. Annis
Thomas M. Dee (*admitted pro hac vice*)
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
mike.annis@huschblackwell.com
tom.dee@huschblackwell.com

and

James P. White
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501
james.white@huschblackwell.com

*Attorneys for Plaintiff Luxco, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

This certifies that on the 21st day of April, 2014, the foregoing First Amended Complaint was served via the Court's electronic service system to the following counsel of record:

Lucas T. Pendry
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
lpendry@winston.com

John E. Schreiber (pro hac vice)
Ian C. Eisner (pro hac vice)
Winston & Strawn
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
jschreiber@winston.com
ieisner@winston.com

*Attorney for Defendant Jim Beam Brands Co.*

/s/ Michael R. Annis

*Attorney for Plaintiff Luxco, Inc.*