**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXCO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 0349 |
| | ) | |
| JIM BEAM BRANDS, CO., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Court denies Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [25]. Defendant must answer the First Amended Complaint on or before 10/2/14. Parties shall file a joint proposed discovery plan by 10/3/14. Status hearing set for 9/30/14 is stricken and reset to 10/7/14 at 8:30 a.m.

**STATEMENT**

On April 21, 2014, Plaintiff Luxco, Inc., ("Luxco") filed a two-count First Amended Complaint alleging two claims for breach of contract against Defendant Jim Beam Brands, Co. ("Jim Beam") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiff alleges that Jim Beam breached a January 28, 2013 Asset Purchase Agreement between the two parties. Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 25.) For the following reasons, the Court denies Defendant's motion to dismiss.

**BACKGROUND**

The Court takes the following facts from the allegations in Luxco's First Amended Complaint, which the Court accepts as true for purposes of the motion to dismiss. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

Luxco is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at 1000 Clark Avenue, St. Louis, Missouri. (R. 24, First Am. Compl. ¶ 2.) Jim Beam is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 510 Lake Cook Road, Deerfield, Illinois. (*Id.* ¶ 3.)

Beginning in early 2012, Luxco and Jim Beam began negotiating the sale by Jim Beam of certain intellectual property and other assets ("Acquired Assets") to Luxco. This sale was to include the exclusive right to sell certain brands of alcoholic beverages (the "Acquired Brands"). (*Id.* ¶ 7.) On January 18, 2013, Luxco and Jim Beam entered into an Asset Purchase Agreement

("APA") for the sale of the Acquired Brands by Jim Beam to Luxco in exchange for valuable consideration. (*Id*. ¶ 8.) As part of the sale, Luxco purchased certain representations and warranties set forth in Article III of the APA. (*Id.*)

Specifically, Section 3.11 of the APA, defined as "Knowledge Parties," represented that "[t]he persons listed in the definition of Knowledge of the Seller" under Section 9.1 "have received the representations and warranties of the Seller hereunder." (*Id*. ¶ 10.) Section 9.1 defined "Knowledge of the Seller" as "actual knowledge after the performance of reasonable due inquiry of records and each named individual's direct reports and predecessors likely to have knowledge of relevant matters." (*Id.*) Jim Beam identified William Newlands (President, North America), Nicholas Fink (Chief Strategy Officer), John Lee (V.P., Strategy & Development), Kevin Cooke (V.P., Sales Strategy), Maria Martin (Director, Intellectual Property), and David Hunter (V.P., Global Manufacturing) as individuals with the obligation to act as those with knowledge of the seller. (*Id*.) These individuals were responsible for gathering true, complete, and accurate information known to Jim Beam, or available to it upon reasonable inquiry to others as set forth in Section 9.1, in response to Luxco's due diligence requests, including true, complete, and accurate information supporting the representations and warranties that Jim Beam provided in the APA. (*Id*.)

In November 2012, Jim Beam prepared and provided to Luxco a Brand Detail Sheet that contained Jim Beam's data on shipments of cases, net sales, gross profits, brand investment and brand contribution for each of the Acquired Brands. (*Id*. ¶ 11.) The parties calculated the purchase price based on the Brand Detail Sheet, and relied on it during communications and negotiations during the due diligence period. (*Id*.) Schedule 3.14 of the APA represents the final version of the Brand Detail Sheet. (*Id*.) On or about November 18, 2012, Donn Lux, President and CEO of Luxco, forwarded to Nicholas Fink and John Lee of Jim Beam a letter providing a term sheet that led to the APA and a list of due diligence items. (*Id*. ¶12.) In the term sheet, the parties agreed to base the purchase price for the Acquired Brands on a multiple of the net profit derived from the number of cases sold of the Acquired Brands. (*Id*. ¶ 13.)

Luxco's due diligence requests included, but are not limited to, the following: (1) retail account incentives/programs by brand, retailers, and distributor; (2) retail or on-premises coop programs by SKU[1] by customer (e.g., "buy one case Red Stag, get Wolfschmidt liters free"); (3) on and off-premises National Account/Chain authorizations by SKU, by chain, and by state; (4) on and off-premises National Account/Chain authorizations in jeopardy by SKU, by chain, and by state; and (5) on and off-premises National Account/Chain support agreements by SKU, by chain, and by state. (*Id*. ¶ 14.) Luxco requested additional information from Jim Beam during the due diligence period, including requests regarding how the Acquired Brands were included in any "national-level Beam incentives." (*Id*. ¶ 15.) From November 2012 until the parties executed the APA, Jim Beam provided periodic responses to Luxco's requests. (*Id*. ¶16.) In some cases, the responses were incomplete; in other cases, Jim Beam refused to respond. (*Id*.) These incomplete or non-existent responses caused Luxco to demand certain representations and warranties in the APA. (*Id*.)

---

[1] Presumably, SKU means "stock keeping unit". Plaintiff's Amended Complaint, however, does not explain this term.

On December 12, 2012, Jim Beam issued to Luxco a report that provided that "Beam has no national account programs" for the Acquired Brands, that Jim Beam would not provide Luxco with information relating to National Accounts or Chain authorizations in jeopardy, and that Jim Beam does not provide incentives or "BI [Brand Investment] dollars" for the Acquired Brands. (*Id.* ¶ 18.) For each of these items, Jim Beam identified the status of Luxco's request as "closed." (*Id.*)

In Section 3.14 of the APA, Jim Beam represented and warranted that the information contained in the Schedule 3.14 (the Brand Detail Sheet) was "true, complete and accurate in all material respects." (*Id.* ¶ 20.) Luxco reasonably relied on this representation and warranty. (*Id.* ¶ 21.)

On approximately January 25, 2012, just a few business days before the APA was scheduled to close, Donn Lux sent to William Newlands, Jim Beam's North American President, an email questioning whether Jim Beam had provided true, complete, and accurate information relating to its investments in the Acquired Brands. (*Id.* ¶ 22.) In response, Jim Beam advised Luxco that the November 2012 Brand Detail Sheet accounted for all of the incentives it provided for the Acquired Brands. (*Id.*) Luxco, however, contends that the information in the Brand Detail Sheet was not true, complete, and accurate in all material respects. (*Id.* ¶ 23.) Rather, Luxco alleges, Jim Beam failed to identify the total number of cases of products of the Acquired Brands that were contingent upon and directly tied to sales of other Jim Beam brands that the APA did not include. (*Id.* ¶ 24.) Specifically, Jim Beam designed its incentive programs to generate increased sales of its premium brands, which the APA did not include, through give-away and discount programs involving the Acquired Brands. (*Id.*) Jim Beam gave away a substantial portion of the Acquired Brands to enhance its sales of its premium brands. (*Id.*) But for these marketing programs, the true sales numbers of the Acquired Brands would have been significantly lower, resulting in a lower purchase price. (*Id.* ¶ 26.)

As a condition to the execution of the APA, Section 6.1(a) of the APA obligated Jim Beam to ensure that the representations and warranties it made in Article III, which included Section 3.14, were true and correct in all respects at and as of the closing date. (*Id.* ¶ 28.) Section 6.1(c) required Jim Beam to deliver to Luxco on the closing date a certificate that its representations and warranties were true and correct. In accordance with Section 6.1(a) and 6.1(c), Jim Beam provided Luxco with this certificate on the closing date. (*Id.* ¶ 29.) Luxco alleges that Jim Beam's failure to disclose its marketing programs constituted a material omission and a breach of Jim Beam's warranty and representation in Section 3.14. (*Id.* ¶ 24.) In order to make Jim Beam's warranty and representation in Section 3.14 true, complete, and accurate, Jim Beam should have disclosed how its brand incentive programs directly affected the reported sales of the Acquired Brands. (*Id.* ¶ 26.) Luxco alleges that because the representations and warranties contained in Sections 3.14, 6.1(a) and 6.1(c) of the APA were not true, complete, and accurate in all material respects, Jim Beam breached the APA. (Id. ¶ 31.)

In Count II, Luxco alleges that in Section 3.13 of the APA, Jim Beam represented and warranted that "[f]rom November 16, 2012, [it] has conducted its business in the ordinary course, consistent with [its] past practices, and there has been no Material Adverse Effect." (*Id.* ¶ 34.) This representation and warranty required Jim Beam to disclose any material adverse

3

effect relating to the business of the Acquired Brands. (*Id*.) Section 9.1 of the APA defined "Material Adverse Effect" as:

> Any change, effect, event, occurrence or state of facts that, taken individually or together with all other changes, effects, occurrences or state of facts, would be materially adverse to the operations, results of operation or condition (financial or otherwise) of the business of the Seller related to the sale of the Products or the brands related to the Products, in each case, taken as a whole; <u>provided however</u>, Material Adverse Effect shall not include (i) any changes in general economic conditions, (ii) any changes, effects, events, occurrences or state of facts that generally affect the distilled beverage industry that do not disproportionately affect the Products or (iii) any acts of terrorism or acts of war that do not disproportionately affect the Products.

(*Id*. ¶ 35.)

Prior to the execution of the APA, Jim Beam reformulated some of its vodka brands, including three Acquired Brands, into vodka liqueur. (*Id.* ¶ 38.) Jim Beam disclosed this reformulation, but did not disclose that certain key national retail accounts for the Acquired Brands advised Jim Beam and its distributors that they would no longer purchase any Acquired Brands that Jim Beam reformulated into vodka liqueur. (*Id*. ¶ 39.) Instead, Jim Beam told Luxco that its research indicated no adverse impact on vodka sales based on the reformulation into vodka liqueur. (*Id.* ¶ 40.) The term sheet indicated that Luxco would pay a premium as a result of expected increased profits from the reformulation. (*Id*.) Luxco asserts that Jim Beam's failure to disclose that national retail accounts would no longer purchase the reformulated Acquired Brands breached the representations and warranties in Section 3.13, 6.1(a), 6.1(c). (*Id*. ¶ 45.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A complaint must contain sufficient factual content "to allow the court 'to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Put differently, a complaint "must provide enough details about the subject matter of the case to present a story that holds together." *Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. Appx. 614, 616 (7th Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010)). The Court asks "whether the story could have happened, not whether it did." *Id.*

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co*., 709 F.3d 662, 665-66 (7th Cir. 2013). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referenced in the complaint and central to the claims. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). Additionally, although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense," the plaintiff pleads himself out of court. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

## ANALYSIS

### I.  Appropriate Pleading Standard

As an initial matter, the parties dispute which pleading standard should govern Luxco's First Amended Complaint. Jim Beam argues that Federal Rule of Civil Procedure 9(b) governs the First Amended Complaint because Luxco asserts that Jim Beam made "intentional misstatements." (R. 26, Def. Mem. at 8.) Thus, Jim Beam asserts, the complaint "sounds in fraud and is, therefore, subject to even stricter pleading requirements." (*Id*.) Luxco, on the other hand, contends that the general pleading standards of Rule 8(a) apply because it alleges only two counts of breach of contract. (R. 28, Resp. at 4.)

Plaintiff's allegations simply do not sound in fraud. Plaintiff has alleged that Jim Beam breached certain representations and warranties in the APA in two material ways: (1) by failing to disclose that a significant portion of its sales of the Acquired Brands were tied to marketing programs designed to enhance sales of its premium brands; and (2) by failing to disclose that "key national retail accounts" had indicated they would not purchase certain Acquired Brands that Jim Beam reformulated into vodka liqueur. Plaintiff alleges that these omissions breached certain representations and warranties in the APA that the parties executed.

The Court, therefore, rejects Jim Beam's assertion that the Rule 9(b) pleading standards apply and instead applies the general pleading standards to Luxco's First Amended Complaint. Because Defendant also argues that Luxco fails to satisfy even those standards, the Court will address the remainder of Jim Beam's arguments.

### II.  Count One: Breach of Contract (APA Section 3.14)

Jim Beam argues that Count One fails to state a claim for several reasons, most of which revolve around Defendant's assertion that Schedule 3.14 (and, therefore the representation and warranty in Section 3.14) consists of "purely historical sales and volume data." (Mem. at 8.) None of Defendant's arguments are persuasive.

First, Jim Beam asserts that Luxco does not, and cannot, allege that the information in Schedule 3.14 is false or inaccurate. (Mem. at 8.) It contends that its failure to disclose that the sales of some of the Acquired Brands included discounted or free sales tied to the sale of premium brands did not render the data in Schedule 3.14 false or inaccurate. (*Id.* at 8-9.) Luxco, however, alleges that Jim Beam's failure to disclose the effect of its marketing programs on sales

5

of the Acquired Brands rendered Schedule 3.14 incomplete and, therefore, "not true, complete, and accurate" as Jim Beam represented in Section 3.14. (Am. Compl. ¶¶ 23, 31.) Whether or not Jim Beam failed to disclose material information and whether that failure breached Jim Beam's representation and warranty in Section 3.14 is a question of fact that the Court cannot resolve at the motion to dismiss stage.

Jim Beam next argues that Luxco attempts to transform Jim Beam's representation and warranty regarding Schedule 3.14 from one addressing historical sales data into one concerning future sales and profitability. (*Id*. at 9.) Jim Beam asserts that such a claim would be barred by the APA, which provided that Jim Beam "does not make any representation or warranty as to the future sales or profitability of the products." (Id.) Jim Beam also contends that Luxco's claim seeks lost profits, which is expressly barred by the APA. (*Id*. at 10.) Both contentions are baseless and mischaracterize Luxco's First Amended Complaint. Nowhere in Count One does Luxco make any allegations regarding future sales. Rather, Luxco's claim alleges that Jim Beam provided incomplete data regarding the sales and volume history of the Acquired Brands. Similarly, Luxco does not seek lost profits and the First Amended Complaint makes no reference to lost profits. Luxco instead alleges that because of Jim Beam's breach, it "agreed to a much higher purchase price than it would have considered had it known the truth." (Am. Compl. ¶¶ 1, 26.)

Finally, Jim Beam asserts that Luxco relies on extrinsic evidence that pre-dated the signing of the APA. Jim Beam contends that Luxco's reliance on this evidence is barred by the parol evidence rule and the APA's integration clause, which provides that the APA "constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the Parties." (*Id*.) Jim Beam's reliance on the parol evidence rule and the integration clause fails because Luxco does not attempt to contradict or modify the terms of the APA. *See Marine Midland Bank-Southern v. Thurlow*, 53 N.Y. 2d 381, 387, 442 N.Y.S. 2d 417, 425 N.E. 2d 805 (1981)[2] ("the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of the writing."); *see also Kamp v. Fiumera*, 69 A.D. 3d 1168, 1170, 893 N.Y.S. 2d 662 (N.Y. App. Div. 2010). Luxco instead included allegations regarding the parties' pre-APA negotiations as context for the parties' contract, which is permissible. *Schron v. Troutman Sanders, LLP*, 97 A.D. 3d 87, 94, 945 N.Y.S. 2d 25 (N.Y. App. Div. 2012) (finding that parol evidence can be used to establish or rebut asserted facts, but not to vary unambiguous terms of a contract).

### III.     Count Two: Breach of Contract (APA Section 3.13)

Jim Beam's primary argument in support of the dismissal of Count Two is that Luxco's allegations do not meet Rule 9(b)'s heightened pleading standard. (Mem. at 11-14.) As the Court has already explained, this argument fails. What remains of Jim Beam's challenge to Count Two is the argument that Luxco's allegations do not rise to the level of a "material adverse event." (Mem. at 14-15.) Jim Beam cites two cases in support, both of which undercut its argument at this stage. Jim Beam cites *In re IBP, Inc. Shareholders Litig.,* 789 A.2d 14, 68 (Del. Ch. 2001) and *Pittsburgh Coke & Chem. Co. v. Bollo*, 421 F. Supp. 908, 930 (E.D.N.Y.

---

[2] Section 10.8 of the APA provides that the "laws of the state of New York, excluding the 'conflict of laws' rules thereof" shall govern the APA. (R. 27-1, APA at 26.)

1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977) for the principle that "material adverse effects" are those that "substantially threaten the overall earnings potential of the target in a durationally significant manner" and that "short term hiccups" do not constitute material adverse effects. (Mem. at 14.) These opinions illustrate that whether threats of loss of business from "key national retail accounts" constitute a material adverse effect is an issue of fact. The opinion in *In re IBP* was a post-trial opinion, and the opinion in *Pittsburgh Coke* detailed the trial court's findings of fact and conclusions of law following a bench trial. Thus, resolution of this issue is not appropriate at this stage.

Luxco's First Amended Complaint alleges two counts of breach of contract. Luxco's allegations identify the specific representations and warranties that it asserts Jim Beam has breached, and they identify Jim Beam's actions that allegedly constitute the breach. The Amended Complaint gives Jim Beam fair notice of Luxco's claims and presents a story that holds together and could have happened. *See Mehta*, 432 Fed. Appx at 616. The Court, therefore, denies Jim Beam's motion to dismiss.

## CONCLUSION

For these reasons, the Court denies Jim Beam's Motion to Dismiss Plaintiff's First Amended Complaint. Jim Beam must answer the First Amended Complaint on or before October 2, 2014.


Dated: September 11, 2014                        ENTERED:

                                                 *[signature]*
                                                 AMY J. ST. EVE
                                                 United States District Court Judge

7