# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LUXCO, INC.,             )
)
      Plaintiff and         )      Civil Action No. 1:14-cv-349
      Counterclaim-Defendant,   )
)      Judge Amy J. St. Eve
  v.                )
)
JIM BEAM BRANDS CO.,     )
)
      Defendant and      )
      Counterclaim-Plaintiff.   )


# MEMORANDUM OF LAW IN SUPPORT OF
# BEAM'S MOTION FOR SUMMARY JUDGMENT


## WINSTON & STRAWN LLP

Gretchen Vetter Scavo               John E. Schreiber
Thomas G. Weber                    Ian C. Eisner
35 W. Wacker Drive                333 S. Grand Avenue
Chicago, IL 60601-9703           Los Angeles, CA 90071-1543
Telephone: (312) 558-5600        Telephone: (213) 615-1700
Email: gscavo@winston.com        Email: jschreiber@winston.com
Email:  tgweber@winston.com       Email: ieisner@winston.com


*Attorneys for Jim Beam Brands Co.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF RELEVANT FACTS .............................................................................. 4

I.    The Parties .................................................................................................................. 4

II.    The Acquired Brands ................................................................................................. 4

    A.    "Incentive" and "Marketing" Programs Applicable to the Acquired Brands ......... 4

    B.    With Luxco's Knowledge, Beam Undertakes to Reformulate Certain of the Acquired Brands ................................................................................................ 6

III.    The APA ..................................................................................................................... 8

    A.    Section 3.14 ...................................................................................................... 9

    B.    Section 3.13 .................................................................................................... 10

    C.    Other Relevant Provisions ............................................................................. 10

IV.    The TSA ................................................................................................................... 11

SUMMARY JUDGMENT STANDARD ............................................................................ 12

ARGUMENT ...................................................................................................................... 14

I.    Beam Is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.14 of the APA ......................................................................................................... 14

    A.    The Representation and Warranty in Section 3.14 Is Limited to the Historical Financial Data Reflected in Schedule 3.14, the Accuracy of Which Luxco Does Not – and Cannot – Dispute ........................................................................... 14

    B.    To the Extent Applicable, the "Incentive" and "Marketing" Programs at Issue Were Accurately Reflected in the Historical Data in Schedule 3.14 .................. 17

II.    Beam is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.13 of the APA ......................................................................................................... 18

    A.    The Facts Giving Rise to the Alleged MAE Did Not Occur During the MAE Period ............................................................................................................. 19

    B.    Even if Notice of Retailer Discontinuances Had Occurred During the MAE Period, This Still Would Not Have Constituted an MAE ..................................... 20

        1.    Discontinuances by Retailers Were Not Unforeseen ............................... 21

        2.    The Isolated Retailer Discontinuances Did Not Substantially Threaten the Overall Earning Potential of the Acquired Brands in a Durationally-Significant Manner ............................................................................... 22

III.    Beam is Entitled to Summary Judgment on Its Counterclaim ......................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adler v. Glickman*,
    87 F.3d 956 (7th Cir. 1996) ...............................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................13

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*,
    328 F.3d 309 (7th Cir. 2003) ...............................................................................13

*Brazinksi v. Amoco Petroleum Additives Co.*,
    6 F.3d 1176 (7th Cir. 1993) .................................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................13

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..................................................................16

*Goodman Mfg. Co. v. Raytheon Co.*,
    No. 98 Civ. 2774, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) ............................16

*Hartz Consumer Grp., Inc. v. JWC Hartz Holdings, Inc.*,
    33 A.D.3d 555 (N.Y. App. Div. 2006) .....................................................16, 17, 22

*Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*,
    965 A.2d 715 (Del. Ch. 2008)........................................................................18, 24

*In re IBP, Inc. S'holders Litig.*,
    789 A.2d 14 (Del. Ch. 2001)............................................18, 19, 21, 22, 23, 24

*In re JC's E., Inc.*,
    No. 95 CIV. 1870 (MGC), 1995 WL 555765 (S.D.N.Y. Sept. 19, 1995) *aff'd,* 84 F.3d
    527 (2d Cir. 1996)....................................................................................19, 21, 22

*Jada Toys, Inc. v. Chicago Imp., Inc.*,
    No. 07 C 699, 2009 WL 3055370 (N.D. Ill. Sept. 18, 2009)..................................24

*KB Dissolution v. Great Am. Opportunities, Inc.*,
    No. 09 Civ. 8565 (LAK), 2010 WL 1379789 (S.D.N.Y. March 26, 2010)........15, 16, 22

*Kirsch v. Brightstar Corp.*,
    78 F. Supp. 3d 676, 696 (N.D. Ill. 2015) .............................................................12

*Logan v. Commercial Union Ins. Co.*,
  96 F.3d 971 (7th Cir. 1996) ...............................................................................13

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
  629 F.3d 697 (7th Cir. 2011) .............................................................................13

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
  692 F. Supp. 2d 373 (S.D.N.Y. 2010)................................................................15

*Pittsburgh Coke & Chem. Co. v. Bollo*,
  421 F. Supp. 908 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977)..............24

*Scott v. Harris*,
  550 U.S. 372 (2007)............................................................................................14

*Siegel v. Shell Oil Co.,*
  656 F. Supp. 2d 825 (N.D. Ill. 2009), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ............13

*Siemens Solar Indus. v. Atl. Richfield Co.,*
  251 A.D.2d 82 (N.Y. App. Div. 1998) ..........................................................15, 17

*Wilson v. Comtrust LLC*,
  249 F. Supp. 2d 993 (N.D. Ill. 2003) .................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 56..................................................................................................1

Fed. R. Civ. P. 56(a) ...........................................................................................12

Defendant and counterclaim-plaintiff Jim Beam Brands Co. ("Beam") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment (i) dismissing with prejudice the two counts for breach of contract that Luxco, Inc. ("Luxco") asserts in this action,[1] and (ii) in Beam's favor on its counterclaim against Luxco for breach of contract.[2]

## INTRODUCTION

Beam and Luxco are both producers of beverage alcohol products, each with scores of brands in its portfolio.[3] In the spring of 2012, Luxco expressed an interest in acquiring a number of Beam's lower-priced "economy" – or "tail" – brands, and the parties entered into discussions regarding a potential transaction. Following due diligence and negotiations, Beam and Luxco entered into (i) an Asset Purchase Agreement dated January 18, 2013 (the "APA") governing the sale of thirteen of Beam's brands (the "Acquired Brands")[4] and associated intellectual property to Luxco, and (ii) a corresponding Transition Services Agreement ("TSA"), pursuant to which Beam agreed to process, bottle, store, and ship certain of the Acquired Brands for Luxco for a period of time after the closing, with payments to be determined subject to a "True-Up" schedule. Following a brief period of further post-signing diligence during which Luxco enjoyed direct access to Beam's distributors, the transaction closed on January 31, 2013.

The APA explicitly defined the representations and warranties that Beam was – and was not – making in connection with the sale. For instance, although Beam warranted that certain

---

[1] Luxco's First Amended Complaint (the "FAC") (Dkt. No. 24 at ¶¶6-46).

[2] Beam's Answer and Counterclaim ("Counterclaim") (Dkt. No. 33 at ¶¶1-22).

[3] Beam's Local Rule 56.1 Statement is filed concurrently with this memorandum of law and cited herein as "SOF" with reference to the applicable paragraph number. Beam's Rule 56.1 SOF states, in full, the undisputed facts relevant to this motion for summary judgment and is incorporated herein.

[4] The Acquired Brands include Bellows Blended, Bellows Bourbon, Bellows Gin, Bellows Light Rum, Bellows Scotch, Bellows Vodka, Calvert Extra, Calvert Gin, Canada House Canadian, Dark Eyes Vodka, Lord Calvert Canadian, Tempo Triple Sec, and Wolfschmidt Vodka.

historical financial data with respect to the Acquired Brands was accurate, the APA expressly provided that Beam was not making any representations or warranties concerning the "future sales or profitability of the products" and, indeed, that "all representations and warranties other than those set forth in [the APA] are hereby expressly disclaimed." The APA also contained an express merger and integration clause wherein Luxco and Beam agreed that the APA, together with ancillary agreements such as the TSA, "constitute the entire agreement" between them and "supersede all prior agreements and understandings, both written and oral, between the Parties."

Disappointed with the post-closing performance of certain of the Acquired Brands, Luxco now attempts to re-write the parties' agreements and avoid its obligations to Beam. Luxco asserts two claims against Beam for breach of express representations and warranties in the APA.[5] The first relates to Beam's representation, in Section 3.14 of the APA, that certain historical sales and shipment data for the Acquired Brands that was reflected in the attached Schedule 3.14 was "true, complete and accurate in all material respects." Notably, Luxco does *not* challenge the accuracy of the historical data provided – nor is there any basis for doing so – but rather complains that Beam "did not [also] state" or "disclose" – in either Section or Schedule 3.14 – "the extent to which" certain "incentive" and/or "other marketing programs impacted the historical sales of the Acquired Brands." (FAC at ¶¶24-27.)

This claim fails for several reasons. First, as discussed in more detail below, courts have consistently rejected breach of representation and warranty claims where, as here, (i) the challenged provision does not expressly mention the subject matter of the undisclosed facts on which the alleged breach is based, and (ii) the operative agreement contains an express merger and integration clause disclaiming any and all other representations and warranties. Moreover,

---

[5] Pursuant to Section 10.8 of the APA, these claims are governed by New York law.

and in any event, discovery has confirmed that Luxco was in fact aware of the "incentive" and "marketing" programs in question *prior* to the closing of the transaction, and that those programs, to the extent applicable, were accurately reflected in the financial data Beam warranted to Luxco in the APA.

Luxco's other breach of representation and warranty claim fares no better. In Section 3.13 of the APA, Beam represented that during the approximately two-month period immediately preceding the signing of the APA "there ha[d] been no Material Adverse Effect" ("MAE") relating to the Acquired Brands. In its FAC, Luxco alleged that an MAE occurred during this period when certain retailers purportedly communicated to Beam that they intended to cease purchasing one or more of the Acquired Brands. (FAC at ¶¶37-39.) As courts have explained, MAE provisions are intended to protect buyers from the occurrence of unforeseen events that "substantially threaten the overall earning potential" of the assets to be acquired in a "durationally-significant" manner. Here, as demonstrated below, the alleged facts that purportedly constitute the MAE did not even occur during the relevant time period, but even if they had occurred, they would not come close to satisfying this standard.

Finally, summary judgment should be granted in Beam's favor on its counterclaim. Luxco has acknowledged that it owes Beam $393,215 under the TSA, yet has refused to pay that (or any) amount on the ground that it intends to "set off" this obligation against the amount of any prospective judgment it might obtain on its claims that Beam breached the APA. As discussed below, even if Luxco's claims were well-founded (and they are not, as demonstrated herein), this would still not provide a defense to liability on Beam's counterclaim.

For these reasons, discussed in greater detail below, Beam is entitled to summary judgment on all three claims in this case.

<center>**STATEMENT OF RELEVANT FACTS**</center>

**I.      The Parties**

Beam is an Illinois-based producer and bottler of beverage alcohol products.  (SOF ¶1.)
Its products are sold to a nationwide network of independent distributors, who in turn contract
with hundreds of retailers throughout the country.  (SOF ¶2.)  At all relevant times, Beam was a
publicly-traded company subject to the Securities and Exchange Commission's ("SEC")
financial reporting requirements.  (SOF ¶14.)[6]

According to its website, Luxco is also one of the nation's leading beverage alcohol
companies.  (SOF ¶ 3.)  It was founded in 1958 and is based in St. Louis, Missouri.  (*Id.*)

**II**.      **The Acquired Brands**

<center>**REDACTED**</center>

**A.      "Incentive" and "Marketing" Programs Applicable to the Acquired Brands**

As noted above, Beam's products – like other beverage alcohol suppliers – are sold to
distributors, who in turn contract with retailers.[7]  It is common, if not universal, in the industry

---

[6] In 2014, Beam was acquired by Suntory Holdings Limited, of which it is now a wholly-owned subsidiary.

[7] For a detailed discussion of the structure and operation of the beverage alcohol industry, incentive programs used to promote the sale of products, including those applicable to the Acquired Brands, and product reformulations, Beam refers the Court to the expert report of Martin A. Jones, a long-time industry executive.  Luxco submitted a two-page "rebuttal" to the Jones report authored by its own CEO, Mr. Lux, which challenged certain sources of data in the Jones report, but otherwise did not contest the substantive points made therein.

for suppliers and distributors to fund programs that support price incentives and marketing for

their brands, and Luxco, Beam and their respective distributors are no exception.  (SOF ¶18.)

REDACTED

REDACTED

**B.** **With Luxco's Knowledge, Beam Undertakes to Reformulate Certain of the Acquired Brands**

REDACTED

REDACTED

The reformulation that Beam undertook in 2012 consisted of converting straight vodka to a vodka liqueur product,

REDACTED

included, among other things:

- Customer and retailer questions and complaints.

REDACTED

- Identification of retailers who had decided to stop selling one or more of the Acquired Brands that had been reformulated.

REDACTED

- Ongoing sales data relating to the Acquired Brands,

REDACTED

With full knowledge of these facts, Luxco chose to proceed with the transaction.

## III.    The APA

Luxco and Beam executed the APA on January 18, 2013.  (SOF ¶9.)  The agreement is governed by New York law.  (Ex. 1 (APA § 10.8).)  Under the APA, Luxco would acquire from Beam the exclusive right to sell the Acquired Brands for a purchase price of approximately $53 million.  (SOF ¶9.)  In Article III of the APA, Beam made certain express representations and

warranties that, pursuant to Sections 6.1(a) and (c), it confirmed were "true and correct . . . as of the Closing Date." The specific representations and warranties that Luxco now claims Beam breached – Sections 3.14 and 3.13 – are set forth below.[11]

### A.    Section 3.14

Section 3.14 of the APA provided (in full) as follows:

> **Brand Detail Sheet**.  The Brand Detail Sheet provided by [Beam] to [Luxco] attached as <u>Schedule 3.14</u> is true, complete and accurate in all material respects.

(SOF ¶10.)   Schedule 3.14, which is reproduced in full below, was a spreadsheet that listed historical net sales and shipment figures for each of the Acquired Brands.   (SOF ¶12.) Specifically, it listed (i) the number of 9.0 liter cases of each of the Acquired Brands shipped during 2009, 2010, 2011, and for the trailing twelve months that ended October 31, 2012, and (ii) the corresponding net sales amount for each of the Acquired Brands during that same timeframe:

| | | | Dark Eyes Vodka (K91) | Bellows Scotch (FS110) | Bellows Gin (I93) | Bellows Vodka (K9910) | Bellows Light Rum (M9930) | Calvert Extra (D11) | Lord Calvert Canadian (C2) |
|---|---|---|---|---|---|---|---|---|---|
| 09 Act | Shipment Cases (9.0) | Total Year | 127,181 | 4,087 | 31,497 | 134,304 | 44,610 | 129,991 | 463,343 |
| | Net Sales (Ship) | Total Year | 5,780,928 | 200,435 | 1,117,817 | 4,801,077 | 1,724,091 | 6,465,753 | 23,445,733 |
| 10 Act | Shipment Cases (9.0) | Total Year | 131,663 | 4,785 | 35,127 | 173,112 | 64,948 | 126,975 | 448,987 |
| | Net Sales (Ship) | Total Year | 5,908,264 | 244,908 | 1,253,696 | 6,122,138 | 2,453,955 | 6,210,529 | 21,992,696 |
| 11 Act | Shipment Cases (9.0) | Total Year | 131,568 | 5,666 | 34,270 | 173,515 | 61,323 | 123,750 | 439,031 |
| | Net Sales (Ship) | Total Year | 5,818,783 | 282,686 | 1,221,930 | 6,111,974 | 2,332,796 | 5,936,419 | 21,354,698 |
| 12 Oct MAT | Shipment Cases (9.0) | TTM | 151,972 | 5,914 | 41,215 | 193,200 | 64,642 | 123,269 | 421,480 |
| | Net Sales (Ship) | TTM | 6,708,080 | 296,629 | 1,481,987 | 6,883,147 | 2,471,565 | 5,926,011 | 20,691,495 |

---

[11] Beam addresses Luxco's claims in the order in which they are presented in the FAC.

| | | | Calvert Gin (I2) | Tempo Triple Sec (Q9951) | Wolfschmidt Vodka (K2) | Canada House (C91) | Bellows Bourbon (B9955) | Bellows Blended New (D9911) | Total (for All Products In Both Tables) |
|---|---|---|---|---|---|---|---|---|---|
| 09 Act | Shipment Cases (9.0) | Total Year | 32,440 | 17,384 | 480,728 | 130,802 | 21,206 | 32,053 | 1,649,625 |
| | Net Sales (Ship) | Total Year | 1,292,591 | 403,625 | 18,236,933 | 5,502,777 | 942,250 | 1,211,901 | 71,125,912 |
| 10 Act | Shipment Cases (9.0) | Total Year | 27,557 | 17,943 | 582,939 | 137,485 | 22,803 | 36,540 | 1,810,865 |
| | Net Sales (Ship) | Total Year | 1,084,433 | 417,189 | 20,772,975 | 5,757,432 | 1,009,957 | 1,386,184 | 74,614,356 |
| 11 Act | Shipment Cases (9.0) | Total Year | 25,041 | 19,569 | 591,698 | 136,932 | 26,273 | 35,561 | 1,804,199 |
| | Net Sales (Ship) | Total Year | 966,800 | 456,312 | 20,634,294 | 5,739,567 | 1,156,791 | 1,348,543 | 73,361,593 |
| 12 Oct MAT | Shipment Cases (9.0) | TTM | 25,295 | 15,263 | 527,256 | 137,455 | 32,408 | 39,533 | 1,778,904 |
| | Net Sales (Ship) | TTM | 980,872 | 367,496 | 18,653,501 | 5,797,478 | 1,432,479 | 1,520,689 | 73,211,430 |

(Ex. 1, APA Schedule 3.14.)[12]

## B.      Section 3.13

Section 3.13 of the APA provided as follows:

> **Ordinary Course After Signing**.  From November 16, 2012 [until the closing of the transaction on January 31, 2013], [Beam] has conducted its business in the ordinary course, consistent with [its] past practices, and there has been no Material Adverse Effect.

(SOF ¶ 10.)  Section 9.1, in turn, defined a "Material Adverse Effect" or "MAE" as follows:

> [A]ny change, effect, event, occurrence or state of facts that, taken individually or together with all other changes, effects, occurrence or state of facts, would be materially adverse to the operations, results of operation or condition (financial or otherwise) of the business of the Seller related to the sale of the Products or the brands related to the Products, in each case, taken as a whole . . . .  (SOF ¶ 10.)

## C.      Other Relevant Provisions

Each of the representations and warranties in Article III of the APA, including those in

Sections 3.14 and 3.13, was subject to and expressly limited by Section 3.20, which provided:

---

[12]  Schedule 3.14 has been reformatted for inclusion in this brief.  As noted in Schedule 3.14, the applicable currency is "U.S. Commercial (S)."

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT, THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF OR CONCERNING THE PRODUCTS, THE ACQUIRED ASSETS OR THE ASSUMED CONTRACT AND HEREBY EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES WITH RESPECT THERETO. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE SELLER DOES NOT MAKE ANY REPRESENTATION OR WARRANTY AS TO THE FUTURE SALES OR PROFITABILITY OF THE PRODUCTS. ALL SUCH OTHER REPRESENTATIONS AND WARRANTIES, AND ALL REPRESENTATIONS AND WARRANTIES OTHER THAN THOSE SET FORTH IN THIS <u>ARTICLE III</u>, ARE HEREBY EXPRESSLY DISCLAIMED BY THE SELLER.

(SOF ¶11 (capitalized in original).)  Luxco and Beam further agreed, in Section 10.6, that the APA, together with ancillary agreements such as the TSA (discussed immediately below), "constitute the entire agreement" between them "and supersede all prior agreements and understandings, both written and oral, between the Parties."  (SOF ¶11.)

## IV.    The TSA

Pursuant to Section 2.2 of the APA, Beam and Luxco also entered into the TSA.  (SOF ¶65.)[13]  Under the TSA, Beam agreed, for a period of one year following the closing, to "process, bottle, store, and ship" certain of the Acquired Brands on Luxco's behalf.  (SOF ¶67.)  With respect to the Acquired Brands that had been reformulated, the TSA expressly contemplated that Luxco could, if it so desired, reverse course and require Beam to produce and provide the original straight vodka formulation for those brands.  (SOF ¶68.)

## REDACTED

The parties agreed that, within ten days of termination of the TSA, Beam would deliver to Luxco a "True-Up Schedule" setting forth (i) the actual volume of each product Luxco purchased during the term of the TSA, compared to (ii) the agreed-upon target volume for each product.  (SOF ¶70.)  If the actual volume exceeded the target volume, Beam would pay Luxco a

---

[13] The TSA, originally dated February 1, 2013, was subsequently amended on April 1, 2013.  (SOF ¶66.)

"True-Up Amount"; conversely, if the target volume exceeded the actual volume, Luxco would

pay Beam a "True-Up Amount." (SOF ¶ 71.) The TSA also provided that:

> The net amount to be paid by either [Luxco] or [Beam] to the other party shall be paid within twenty (20) Business Days of [Beam's] delivery of the True-Up Schedule and [Luxco's] confirmation that it does not dispute the True-Up Schedule; provided, however, if the True-Up Schedule is not disputed by [Luxco] within such twenty (20) Business Day period, such True-Up Schedule shall be deemed final for all purposes of this Agreement. (SOF ¶ 72.)

REDACTED

Luxco nevertheless refused – and

continues to refuse – to pay the agreed-upon amount, stating that it is entitled to "set off" that

amount against the prospective judgment it seeks in this action based on "Beam's [alleged]

breach of the APA." (SOF ¶ 76.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when the record shows that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The moving party is not required to disprove the nonmovant's claim, but rather "can

prevail just by showing that the other party has no evidence on an issue on which that party has

the burden of proof." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 696 (N.D. Ill. 2015)

(quoting *Brazinksi v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993)); *see also Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 979 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 831 (N.D. Ill. 2009) (St. Eve, J.) *aff'd*, 612 F.3d 932 (7th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).[14] "[T]he mere existence of *some* alleged factual dispute between the parties will not" suffice, nor may the nonmoving party meet its burden by relying on "mere conclusions and allegations" that a genuine issue of fact exists. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 247-48) (emphasis in original); *Logan*, 96 F.3d at 978 ("Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute."). It must instead counter the movant's evidence by providing "materials of evidentiary quality" to create material factual issues. *Wilson v. Comtrust LLC*, 249 F. Supp. 2d 993, 996 (N.D. Ill. 2003) (St. Eve, J.) (quoting *Adler v. Glickman*, 87 F.3d 956, 959 (7th Cir. 1996)).

As this Court has explained, "[a] non-movant must do more than raise mere 'metaphysical doubt' concerning the existence of a genuine issue of fact, and must present more than a 'scintilla of evidence' in order to oppose a motion for summary judgment." *Id.* (citations omitted). In determining summary judgment motions, "district courts are not required to draw every requested inference" in favor of the nonmoving party; "they must only draw reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Siegel*, 656 F. Supp. 2d at 831 (the "facts must be viewed in the

---

[14] Pursuant to Section 10.10 of the APA, any trial in this case will be to the Court, not a jury.

light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## ARGUMENT

**I.      Beam Is Entitled to Summary Judgment on Luxco's
         Claim for Breach of Section 3.14 of the APA**

As noted above, the sum and substance of the representation and warranty that Beam provided in Section 3.14 of the APA was that the historical net sales and shipment figures for the Acquired Brands reflected in Schedule 3.14 (reproduced in full at pp. 10, *supra*) were "true, complete and accurate in all material respects."  (SOF ¶10.)  Critically, Luxco does not dispute the accuracy of this historical financial data.  (SOF ¶17.)  Rather, Luxco's claim is based on the fact that Beam "did not [also] state" or "disclose" – in either Section or Schedule 3.14 – "the extent to which" certain "incentive" and/or "other marketing programs impacted the historical sales of the Acquired Brands."  Luxco posits that "[b]ut for those marketing programs, the true sales numbers of the Acquired Brands would have been significantly less."  (FAC at ¶¶24-27.) This claim fails for at least two independent reasons, as discussed below.

**A.      The Representation and Warranty in Section 3.14 Is Limited to the
         Historical Financial Data Reflected in Schedule 3.14, the Accuracy of
         Which Luxco Does Not – and Cannot – Dispute**

As Luxco's own allegations acknowledge, neither Section 3.14, Schedule 3.14 nor any other provision of the APA makes any reference to – let alone express representation or warranty concerning – any "incentive" or "marketing" programs affecting the Acquired Brands.  Rather, as noted above, Section and Schedule 3.14 are limited to providing certain specified *historical financial data* for the Acquired Brands, the accuracy of which Luxco does not dispute, nor is there any evidentiary basis to do so.  The APA further provides that (i) Beam "makes no representations or warranties" except those "expressly set forth in this Agreement," and (ii) the

APA and TSA "constitute the entire agreement" between Luxco and Beam "and supersede all prior agreements and understandings, both written and oral, between the Parties." (SOF ¶ 11.)

Courts construing New York law[15] have consistently rejected breach of representation and warranty claims under similar circumstances, particularly where, as here, the parties' contract makes no express mention of the subject matter of the alleged breach. *See, e.g.*, *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 379 (S.D.N.Y. 2010) (granting summary judgment where the APA, which included "an express integration clause," contained no "specific language" relating to "sales support or marketing support," the subject matter of the alleged breach); *KB Dissolution v. Great Am. Opportunities, Inc.*, No. 09 Civ. 8565 (LAK), 2010 WL 1379789, at *1-2 (S.D.N.Y. March 26, 2010) (dismissing breach of representation and warranty claim against seller where "the APA contains no representations or warranties with respect to" the alleged nondisclosure on which the buyer's claim was based); *Siemens Solar Indus. v. Atl. Richfield Co.*, 251 A.D.2d 82, 82 (N.Y. App. Div. 1998) (concluding that there was no "merit to plaintiff's breach of warranty claim" where agreement "nowhere mentions the specific matter that is the subject of the alleged nondisclosure" on which the claim was based).

The court's decision in *KB Dissolution* is particularly instructive. There, as here, a buyer claimed that the seller breached representations and warranties in an APA by, among other things, failing to disclose certain information that purportedly impacted the sales data the seller represented to the buyer. *KB Dissolution*, 2010 WL 1379789, at *1. In *KB Dissolution*, the alleged nondisclosure was that certain of the seller's "top sales people had been hired away by a competitor." *Id.* The court noted that "the APA contained extensive representations and warranties by [the seller] concerning its business and financial statements," but, like the APA at

---

[15] As noted above, the APA is governed by New York law.

issue here, "expressly disclaimed the existence of any representation and warranty except those set forth in [the APA]." *Id.* at *2. The court further observed that:

> [T]he APA contains no representations or warranties with respect to whether [the competitor] had solicited [the seller's] employees and, if so, the extent to which it had been successful. Nor does it contain any representations as to which of [the seller's] sales people were still with the company or as to the accuracy of any information given to [the buyer] during its due diligence.

*Id.* Accordingly, the court dismissed the buyer's claim, reasoning that:

> Had [the buyer] wished to have enforceable representations and warranties with respect to the sales force, it could have bargained for them or declined to proceed with the transaction if they had been refused. But there is no basis on which the Court may rewrite the contract that [the buyer] elected to sign.

*Id.* The same reasoning applies here, where, as Luxco acknowledges, the APA contains no representations or warranties with respect to "incentive" or "marketing" programs. Luxco, like the buyer in *KB Dissolution*, could have bargained for such provisions or declined to proceed with the transaction in their absence. It did neither, and instead proceeded with the purchase under the terms of the APA. The Court cannot now re-write the contract for Luxco's benefit.

Decisions by other courts construing New York law are to the same effect and further underscore the deficiencies with respect to Luxco's Section 3.14 claim. *See, e.g.*, *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) ("Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."); *id.* ("It is not the role of the courts to relieve sophisticated parties from detailed, bargained-for contractual provisions that allocate risks between them . . . ."); *Goodman Mfg. Co. v. Raytheon Co.*, No. 98 Civ. 2774, 1999 WL 681382, at *14 (S.D.N.Y. Aug. 31, 1999) ("Since the parties limited the warranties and representations that make up the Agreement, [the court] may not now change them but must instead hold [the buyer] to the deal it negotiated."); *Hartz*

*Consumer Grp., Inc. v. JWC Hartz Holdings, Inc.*, 33 A.D.3d 555, 556 (N.Y. App. Div. 2006) (granting summary judgment in favor of seller where buyer "did not seek any written assurances in the Stock Purchase Agreement from . . . sellers regarding" issue later complained of).

Indeed, leaving aside the other substantive flaws in Luxco's 3.14 claim, it would be improper and inequitable –                                 REDACTED

– to permit it to recover based on the alleged "nondisclosure" of those programs. *See, e.g.*, *Siemens*, 251 A.D.2d at 82 ("[I]t would be inequitable to permit plaintiff to recover under such warranty in view of its knowledge of facts that would otherwise constitute a breach thereof.").

**B.    To the Extent Applicable, the "Incentive" and "Marketing" Programs at Issue Were Accurately Reflected in the Historical Data in Schedule 3.14**

As noted above, Luxco does not contend that the allegedly undisclosed "incentive" and "marketing" programs rendered the historical net sales and shipment figures in Schedule 3.14 inaccurate.    (SOF ¶17.)    Nor is there any evidence to support such an assertion.

REDACTED

Beam's independent auditors approved each of Beam's financial statements during the relevant time period, and neither the SEC, Beam's shareholders nor any other entity or individual has challenged the accuracy of those statements or the underlying data on which they were based.  (SOF ¶16.)

What is more, the uncontroverted evidence confirms that the allegedly undisclosed "incentive" and "marketing" programs about which Luxco now complains were, to the extent applicable, already accurately reflected in the net sales figures included in Schedule 3.14.  As noted above,                                 REDACTED

17

## II. Beam is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.13 of the APA

As noted above, in Section 3.13 of the APA, Beam represented that, "[f]rom November 16, 2012" until the closing on January 31, 2013, it "conducted its business in the ordinary course, consistent with [its] past practices, and there has been no Material Adverse Effect." (*See also* Section 9.1 of the APA (defining a "Material Adverse Effect" or "MAE" as "any change, effect, event, occurrence or state of facts that . . . would be materially adverse to the operations, results of operation or condition . . . of the business of [Beam] related to the [Acquired Brands] . . . taken as a whole.").) (SOF ¶10.)

As courts applying New York law have explained, MAE provisions are intended to protect a buyer "from the occurrence of unknown events that substantially threaten the overall earning potential of" the assets to be acquired "in a durationally-significant manner." *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 68 (Del. Ch. 2001) (under New York law); *Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*, 965 A.2d 715, 738 (Del. Ch. 2008) (an MAE exists only

when the alleged change is proven to be material as "viewed from the longer-term perspective of a reasonable acquirer"). An MAE is "limited to events that were outside the contemplation of the parties at the time of the transaction" and that "could not have been foreseen or guarded against in the contract." *In re JC's E., Inc.*, No. 95 CIV. 1870 (MGC), 1995 WL 555765, at *3 (S.D.N.Y. Sept. 19, 1995) *aff'd*, 84 F.3d 527 (2d Cir. 1996). It is, of course, the burden of the party asserting an MAE to prove that one has occurred. *See IBP*, 789 A.2d at 68.

Luxco does not contend that Beam neglected to "conduct its business in the ordinary course, consistent with [its] past practices." Rather, Luxco's claim for breach of Section 3.13 is premised on the allegation that an MAE occurred, between the requisite dates of November 16, 2012 and January 31, 2013 (the "MAE Period"), when "certain key retail accounts for the Acquired Brands" – namely, the grocery chains Publix, Safeway and Dominick's – purportedly communicated to Beam, either directly or through Beam's distributors, that they "intended to cease" purchasing certain of the Acquired Brands that had been reformulated. (FAC at ¶¶37-39; Ex. 52, Luxco's Objections and Responses to Beam's First Set of Interrogatories at 3-4.) This claim fails for several independent reasons.

A.   **The Facts Giving Rise to the Alleged MAE Did Not Occur During the MAE Period**

Luxco's claim for breach of Section 3.13 suffers from a threshold fatal flaw: Luxco has been unable to unearth any evidence to support its allegation, made "on information and belief," that "key retail accounts" communicated to Beam during the MAE Period that they intended to stop purchasing the Acquired Brands. Not only does the evidence not support this allegation, it conclusively refutes it.

REDACTED

REDACTED

Nor is there any other evidence in the record to support Luxco's allegation.[17]

REDACTED

Of course, any instances such as these, in which retailers advised Beam of an intent to discontinue a brand either *before* or *after* the MAE Period are irrelevant for purposes of the representations and warranties in Section 3.13, which by its plain terms limits the applicable time period to between November 16, 2012 and January 31, 2013.  (SOF ¶ 10.)  Accordingly, Luxco's claim for breach of Section 3.13 of the APA fails.

**B.     Even if Notice of Retailer Discontinuances Had Occurred During the MAE Period, This Still Would Not Have Constituted an MAE**

As noted above, the MAE standard is a burdensome one.  To establish an MAE, a plaintiff must demonstrate not only that the event or effect in question actually occurred during

REDACTED

the relevant time frame, but also that (i) it was unforeseen, *i.e.*, "outside the contemplation of the parties at the time of the transaction," (ii) it "substantially threaten[ed] the overall earning potential" of the assets to be acquired, ***and*** (iii) did so "in a durationally-significant manner." *IBP,* 789 A.2d at 68; *JC's E*, 1995 WL 555765, at *3. Here, the alleged MAE events do not satisfy any, let alone all, of these criteria.

### 1. Discontinuances by Retailers Were Not Unforeseen

First, the risk that retailers would stop purchasing the reformulated brands can hardly be described as "unforeseen."

<div align="center">REDACTED</div>

Accordingly, irrespective of when they occurred and/or were communicated to Beam, retailer discontinuances of the reformulated brands can hardly be described as an "unknown event" that was "outside the contemplation of the parties at the time of the transaction" and "could not have been foreseen or guarded against in the contract." *IBP*, 789 A.2d at 68; *JC's E*, 1995 WL 555765, at *3.[18]  This provides an independent basis for granting summary judgment in Beam's favor on Luxco's claim for breach of Section 3.13 of the APA.

> **2.      The Isolated Retailer Discontinuances Did Not Substantially Threaten the Overall Earning Potential of the Acquired Brands in a Durationally-Significant Manner**

Even if the isolated discontinuances discussed above had occurred within the MAE Period (which they did not) and were unforeseen (which they were not), they still would not constitute an MAE because they did not "substantially threaten the overall earning potential" of the Acquired Brands "in a durationally-significant manner."

---

[18] Here again, "[h]ad [Luxco] wished to have enforceable representations and warranties with respect to [retail accounts], it could have bargained for them or declined to proceed with the transaction if they had been refused."  *KB*, 2010 WL 1379789, at *2; *Hartz*, 33 A.D.3d at 555-56 (granting summary judgment in favor of seller where, although buyers were aware of matters that might result in "the potential decrease in the demand for and sales of" seller's key product, "they did not seek any written assurances in the stock purchase agreement from . . . sellers regarding demand for the product").  And, here again, it did neither.

<div align="center">REDACTED</div>

Accordingly, there is certainly nothing from a qualitative standpoint about the isolated discontinuances of Wolfschmidt – one of thirteen Acquired Brands – in limited geographic regions that would "substantially threaten the overall earning potential of" the Acquired Brands, taken as a whole, "in a durationally-significant manner." *IBP*, 789 A.2d at 68.

From a quantitative standpoint, this contention approaches the absurd. To illustrate using just one metric, Schedule 3.14 (shown and discussed above) reflects that the total number of cases of all of the Acquired Brands shipped by Beam to all distributors nationwide for the trailing 12 months ("TTM") ending October 31, 2012 was approximately 1.8 million. (SOF ¶13.)

<div align="center">REDACTED</div>

This is hardly a "substantial[] threat[]" to "the overall earning potential of the Acquired Brands as a whole," *IBP*, 789 A.2d at 67-71,

<div align="center">REDACTED</div>

Finally, given that Luxco had the ability to – <div align="center">REDACTED</div> – reverse the reformulation and revert to selling the original straight vodka formulations of those products (SOF ¶¶ 68-69), the alleged events also fail the "durationally-significant" component of the test.

---

<div align="center">REDACTED</div>

*See IBP*, 789 A.2d at 68; *Hexion*, 965 A.2d at 738 (an MAE exists only when the alleged change is proven to be material as "viewed from the longer-term perspective of a reasonable acquirer"); *Pittsburgh Coke & Chem. Co. v. Bollo*, 421 F. Supp. 908, 930 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977) (finding no MAE because neither the target's "financial condition" nor its "business or operations" permanently changed). This provides another independent basis on which to grant summary judgment dismissing Luxco's claim for breach of Section 3.13.

### III. Beam is Entitled to Summary Judgment on Its Counterclaim

In order to prevail on its counterclaim, Beam must establish (i) that the TSA was a valid contract, (ii) its own performance under the TSA, (iii) Luxco's breach and (iv) resulting injury. *See Jada Toys, Inc. v. Chicago Imp., Inc*., No. 07 C 699, 2009 WL 3055370, at *9 (N.D. Ill. Sept. 18, 2009). There is no dispute – genuine or otherwise – that the TSA is a valid contract, that Beam performed its obligations thereunder, and that, under the terms of the agreement, Luxco owes Beam a "True-Up" payment in the amount of $393,215. Indeed, Luxco has acknowledged as much. (SOF ¶75.) Nevertheless, Luxco has refused to pay this amount on the stated ground that it is entitled to "set off" this payment obligation against the prospective judgment it seeks in this action based on "Beam's [alleged] breach of the APA." (SOF ¶76.)

Luxco's argument fails for at least two independent reasons. First, as demonstrated at length above, Luxco's claims that Beam breached the APA are without merit and could never support a judgment in Luxco's favor. Second, and in any event, it is well-settled that, although competing damages awards, once entered, may in appropriate circumstances be offset, a potential offset is "not a defense to liability on . . . contract claims." *Jada Toys*, 2009 WL 3055370, at *9. Thus, summary judgment should be granted in Beam's favor on this claim too.

## CONCLUSION

For these reasons, Beam respectfully requests that this Court enter summary judgment (i) dismissing with prejudice the two counts for breach of contract asserted by Luxco, and (ii) in Beam's favor on its counterclaim against Luxco in the amount of $393,215, plus interest.

Dated: January 29, 2016                     Respectfully submitted,

                                       **WINSTON & STRAWN LLP**

                                       By:  /s/ John E. Schreiber
                                            John E. Schreiber (Pro Hac Vice)
                                            Ian C. Eisner (Pro Hac Vice)
                                       333 South Grand Avenue
                                       Los Angeles, CA 90071-1543
                                       Telephone: (213) 615-1700
                                       Email:  jschreiber@winston.com
                                       Email:  ieisner@winston.com

                                            Gretchen Vetter Scavo
                                            Thomas G. Weber
                                       35 W. Wacker Drive
                                       Chicago, IL 60601-9703
                                       Telephone: (312) 558-5600
                                       Fax: (312) 558-5700
                                       Email:  gscavo@winston.com
                                       Email:  tgweber@winston.com

                                       *Attorneys for Jim Beam Brands Co.*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 29, 2016, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF BEAM'S MOTION FOR SUMMARY JUDGMENT was electronically filed with the Court using the CM/ECF system, which will send a notice of filing to all counsel of record:

Michael R. Annis
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
mike.annis@huschblackwell.com

James P. White
Thomas M. Dee
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
james.white@huschblackwell.com
tom.dee@huschblackwell.com

Dated: January 29, 2016                                   /s/ Thomas G. Weber