# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LUXCO, INC.,                    )

                             )

        Plaintiff and           )        Civil Action No. 1:14-cv-349

        Counterclaim-Defendant,   )

                             )        Judge Amy J. St. Eve

    v.                       )

                             )

JIM BEAM BRANDS CO.,       )

                             )

        Defendant and       )

        Counterclaim-Plaintiff.    )

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## BEAM'S MOTION FOR SUMMARY JUDGMENT

**WINSTON & STRAWN LLP**

Gretchen Vetter Scavo           John E. Schreiber
Thomas G. Weber              Ian C. Eisner
35 W. Wacker Drive            333 S. Grand Avenue
Chicago, IL 60601-9703       Los Angeles, CA 90071-1543
Telephone: (312) 558-5600     Telephone: (213) 615-1700
Email: gscavo@winston.com     Email: jschreiber@winston.com
Email: tgweber@winston.com    Email: ieisner@winston.com

*Attorneys for Jim Beam Brands Co.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 6

    I.    Beam Is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.14 of the APA (Count I) ................................................................ 6

        A.    Luxco Has Failed to Offer Any Competent Evidence Demonstrating That Schedule 3.14 Is Not "True" and "Accurate" in "All Material Respects" ................................................................ 6

        B.    Luxco's Proffered Interpretation of the Term "Complete" As Used to Describe the Data Reflected in Schedule 3.14 is Both Unreasonable and Directly Refuted by the Relevant Extrinsic Evidence ................................................................................................. 7

        C.    Luxco Presents No Competent Evidence Demonstrating That ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ................. 12

    II.    Beam Is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.13 of the APA (Count II) .............................................................. 14

        A.    Luxco Has Abandoned the MAE Theory Alleged in the FAC ................. 14

        B.    Luxco's New MAE Theory Is Just as Baseless as the Original ............... 15

    III.    Beam Is Entitled to Summary Judgment on Its Counterclaim ............................ 19

CONCLUSION ............................................................................................................... 19

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  892 F. Supp. 2d 596 (S.D.N.Y. 2012)......................................................................17

*Beck v. University of Wisconsin Bd. of Regents*,
  75 F.3d 1130 (7th Cir. 1996) ..................................................................................10

*Celotex Corp. v. Catreet*,
  477 U.S. 317 (1986)..................................................................................................1

*Chock Full O'Nuts Corp. v. Tetley, Inc*,
  152 F.3d 202 (2d Cir. 1998)......................................................................................9

*Cont'l Indus. Capital, LLC v. Lightwave Enters., Inc.*,
  85 A.D.3d 1639, 925 N.Y.S.2d 301 (N.Y. App. Div. 2011) ....................................7

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002).....................................................................11

*Goodman Mfg. Co. v. Raytheon Co.*,
  No. 98 Civ. 2774, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) .......................11, 17

*Goodman v. Nat'l Sec. Agency, Inc.*,
  621 F.3d 651 (7th Cir. 2010) ...............................................................................1, 18

*Hartz Consumer Grp., Inc. v. JWC Hartz Holdings, Inc.*,
  33 A.D.3d 555 (N.Y. App. Div. 2006) ................................................................11, 12

*Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*,
  965 A.2d 715 (Del. Ch. 2008)..................................................................................18

*In re IBP, Inc. S'holders Litig.*,
  789 A.2d 14 (Del. Ch. 2001)..........................................................................5, 14, 17

*In re JC's E., Inc.*,
  No. 95 CIV. 1870 (MGC), 1995 WL 555765 (S.D.N.Y. Sept. 19, 1995), *aff'd*, 84
  F.3d 527 (2d Cir. 1996)...............................................................................4, 14, 15, 16

*Johnson v. Cambridge Indus., Inc.*,
  325 F.3d 892 (7th Cir. 2003) ...............................................................................1, 13

*Jones v. City of Elkhart, Indiana*,
  737 F.3d 1107 (7th Cir. 2013) ..................................................................................1

*KB Dissolution v. Great Am. Opportunities, Inc.*,
　　No. 09 Civ. 8565 (LAK), 2010 WL 1379789 (S.D.N.Y. March 26, 2010)....................2, 8, 11

*McGuinness v. Lincoln Hall*,
　　263 F.3d 49 (2d Cir. 2001)..........................................................................................8

*Modrowski v. Pigatto*,
　　712 F.3d 1166 (7th Cir. 2013) ....................................................................................1

*Northern Illinois Telecom, Inc. v. PNC Bank, NA*,
　　No. 12 C 2372, 2014 WL 4244069 (N.D. Ill. Aug. 27, 2014)..................................1, 6, 13, 14

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
　　692 F. Supp. 2d 373 (S.D.N.Y. 2010)...........................................................................7

*Pacheco v. Cambridge Tech. Partners (Massachusetts), Inc.*,
　　85 F. Supp. 2d 69 (D. Mass. 2000) .........................................................................17, 18

*Pfizer, Inc. v. Stryker Corp.*,
　　348 F. Supp. 2d 131 (S.D.N.Y. 2004).........................................................................19

*Pittsburgh Coke & Chem. Co. v. Bollo*,
　　421 F. Supp. 908 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977) ...................................18

*S.C. Johnson & Son. Inc. v. DowBrands. Inc.*,
　　167 F. Supp. 2d 657 (D. Del. 2001)...........................................................................18

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
　　959 F.2d 425 (2d Cir. 1992).......................................................................................9

*Shepley v. New Coleman Holdings Inc.*,
　　174 F.3d 65 (2d Cir. 1999).......................................................................................11

*Silverman v. Motorola*,
　　772 F. Supp. 2d 923 (N.D. Ill. 2011) (St. Eve, J.) ..................................................................15

*Thompson v. Village of Monee*,
　　110 F. Supp. 3d 826, 837 (N.D. Ill. 2015) (St. Eve, J.) ......................................................1, 18

*Topps Co. v. Cadbury Stani S.A.I.C.*,
　　526 F.3d 63 (2d Cir. 2008).....................................................................................9, 10

*Waters v. Glasheen*,
　　103 A.D.2d 1043 (N.Y. App. Div. 1984) ...........................................................................19

*Weiner v. Anesthesia Assoc. of W. Suffolk*,
　　203 A.D.2d 454 (N.Y. App. Div. 1994) ...........................................................................9

## INTRODUCTION

To state the obvious, Beam does not bear the burden of proof or persuasion on Luxco's claims for breach of express representations and warranties. Luxco does. Accordingly, contrary to the impression Luxco seeks to create, Beam need not disprove Luxco's claims in order to prevail on summary judgment. Rather, it is sufficient for Beam merely to point out the absence of evidence supporting Luxco's claims. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) ("Where the nonmovant bears the ultimate burden of persuasion on a particular issue . . . the requirements that Rule 56 imposes on the moving party are not onerous . . . . [T]he movant's initial burden 'may be discharged by showing – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 325 (1986)).

Beam did that and more in its moving papers, at which point, the burden shifted to Luxco to "present 'definite, competent evidence'" on which the trier of fact – here, the Court – could find in its favor. *See Northern Illinois Telecom, Inc. v. PNC Bank, NA*, No. 12 C 2372, 2014 WL 4244069, at *5 (N.D. Ill. Aug. 27, 2014) (St. Eve, J.) (quoting *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1113 (7th Cir. 2013)). Stated another way, summary judgment is the "put up or shut up" moment for Luxco, where it "is required to marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat'l Sec. Agency, Inc*., 621 F.3d 651, 654 (7th Cir. 2010); *see also Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003) (same); *Thompson v. Village of Monee*, 110 F. Supp. 3d 826, 837 (N.D. Ill. 2015) (St. Eve, J.) ("Summary judgment will be granted against a party who does not 'come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question.'") (quoting *Modrowski*, 712 F.3d at 1167); *Northern Illinois Telecom*, 2014 WL 4244069, at *5 ("[M]ere allegations or denials" are insufficient.").

1

Luxco has failed to meet this burden here, entitling Beam to summary judgment:

(1)     Luxco presents no competent evidence demonstrating that Beam's historical net sales and case shipment figures reflected in Schedule 3.14 to the APA were in any "material respect" "untrue" or "inaccurate."[1]  Rather, Luxco's position appears to be that the inclusion of the word "complete" in the representation and warranty describing this historical data somehow imposed upon Beam a contractual "duty to disclose all information regarding [any] support programs" for the Acquired Brands, including "the extent to which" any "marketing programs impacted . . . historical sales."  (R. 102, Luxco's Mem. in Opp'n to Beam's Motion for Summary Judgment ("Luxco Opp.") at 20; R. 24, First Amended Compl. ("FAC") ¶¶ 24-27.)  Not only does Luxco fail to identify any legal or factual support for this strained and overly-expansive reading of the contractual language, the extrinsic evidence relating to the negotiation of the APA (which Luxco studiously avoids despite having now suggested for the first time that the provision is ambiguous) conclusively refutes the notion that the parties had any such intent or understanding.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.[2]

See *KB Dissolution v. Great Am. Opportunities, Inc.*, No. 09 Civ. 8565 (LAK), 2010 WL 1379789, at *2 (S.D.N.Y. March 26, 2010) ("Had [the buyer] wished to have enforceable representations and warranties with respect to [particular issues that arguably impacted sales], it could have bargained for them or declined to proceed with the transaction if they had been

---

[1]  *See* R. 92, Beam's Local Rule 56.1 Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment ("SOF") ¶ 10 at APA § 3.14 (representing that "Schedule 3.14 is true, complete and accurate in all material respects").

[2]  *See* Beam's Response to Luxco's Statement of Additional Facts ("Response to Luxco's SOAF") ¶ 91, filed concurrently herewith.

refused. But there is no basis on which the Court may rewrite the contract that [the buyer] elected to sign.").

Moreover, and in any event, even if Section 3.14 did impose upon Beam such an open-ended disclosure obligation (and it plainly does not), Luxco has failed to provide any competent evidence demonstrating ██████████████████████████████████████████████ ████████████████████████ – the two "undisclosed facts" on which Luxco is now focused – would have *any* impact, let alone a "material" one, on Beam's reported net sales and/or case shipment figures reflected in Schedule 3.14. (SOF ¶ 29, Response to Luxco's SOAF ¶¶ 111-112.) ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ (SOF ¶ 36.) Neither topic has any impact whatsoever on Beam's historical net sales and case shipment data reflected in Schedule 3.14, and Luxco presents no competent evidence to the contrary. For these reasons, Beam is entitled to summary judgment on Count I of Luxco's FAC.

(2)     Nor does Luxco present competent evidence demonstrating that a "Material Adverse Effect" (or "MAE") occurred during the relevant two and a half-month period preceding

---

[3] As Luxco notes, "Beam and Luxco, as suppliers of liquor products, sell only to their distributor clients. In turn, the distributors sell to retailers, who sell the liquor products to consumers." (Luxco Opp. at 1 n.1.) ████████████████████████████████████████████████

3

the closing of the transaction.[4]  Having conceded that the purported MAE it alleged in the FAC

did not actually occur during the relevant time frame, Luxco has now shifted its theory to define

the purported MAE as negative consumer and retailer reaction to the reformulation of three of

the thirteen Acquired Brands that "reverberat[ed]" "throughout and beyond the warranty period,"

leading to a decline in sales of those brands.  (Luxco Opp. at 1, 24.)  This revamped theory fares

no better than its predecessor.  Most notably, as explained in Beam's opening brief, MAEs are

"*limited to events that were outside the contemplation of the parties at the time of the*

*transaction*" and that "*could not have been foreseen or guarded against in the contract*."  *In re*

*JC's E., Inc*., No. 95 CIV. 1870 (MGC), 1995 WL 555765, at *3 (S.D.N.Y. Sept. 19, 1995)

(emphasis added), *aff'd,* 84 F.3d 527 (2d Cir. 1996).  Here, the risk that sales of the brands in

question would decline due to negative consumer and retailer reaction to the reformulation was

far from unforeseen.  On the contrary, as shown in Beam's moving papers, ████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████).[5]  These

facts, standing alone, are fatal to Luxco's claim of an MAE.

   But even if that were not the case, Luxco has also failed to present competent evidence

demonstrating that any pre-closing decline in sales on three of the thirteen brands "substantially

---

[4]  *See* SOF ¶ 10 at APA Section 3.13 (representing that "[f]rom November 16, 2012 [until the closing on
January 31, 2013] . . . there has been no Material Adverse Effect").

[5]  Obviously, to the extent Luxco is relying, even in part, on a *post-closing* decline in sales to establish an
MAE, this gets it nowhere, since (a) the representation and warranty that Beam provided in Section 3.13,
naturally, ran only up until the closing (*i.e*., if there was no MAE by that point, there could be no breach
of the representation and warranty), and (b) the APA expressly disclaimed any representation or warranty
relating to "the future sales or profitability of the products."  (*See* SOF ¶ 11.)

threaten[ed] the overall earning potential of" the Acquired Brands "taken as a whole" in a "durationally-significant manner." (*See* SOF ¶ 10 at APA Section 9.1 (defining "MAE"); *In re IBP, Inc. S'holders Litig*., 789 A.2d 14, 68 (Del. Ch. 2001) (applying New York law) (recognizing that it is the burden of the party asserting an MAE to prove that one has occurred).) Accordingly, Beam is likewise entitled to summary judgment on Count II of Luxco's FAC.

(3)     Given that Luxco's only defense to Beam's counterclaim for breach of the TSA is Beam's purported breach of the APA (discussed above), Beam is also entitled to summary judgment on this claim. Indeed, because the parties' competing claims involve separate promises contained in separate contracts, Beam would be entitled to summary judgment on its counterclaim even if either of Luxco's claims under the APA were allowed to proceed to trial.

***

Luxco, which describes itself as one of the nation's leading beverage alcohol companies, is a sophisticated party that was represented during diligence and negotiations by competent counsel. (SOF ¶ 3; R. 104, Luxco's Statement of Additional Undisputed Material Facts ("Luxco's SOAF") ¶ 102.) Luxco had every opportunity to (and did) bargain for and negotiate specific representations and warranties in the APA. And it was also free to walk away from the transaction if any representations and warranties it requested were refused or it had other reservations about the deal. With eyes wide open, Luxco agreed to the terms of the APA and decided to consummate the transaction. (Luxco's SOAF ¶ 102.) After the fact, it now seeks to rewrite the parties' agreements to include representations and warranties that simply *do not exist* in the APA. Beam is entitled to summary judgment on all counts.

**ARGUMENT**

### I.  Beam Is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.14 of the APA (Count I)

Luxco's Opposition makes clear that the parties do not genuinely dispute the material facts relevant to this claim.  At issue in Count I is whether Beam breached a discrete and unambiguous representation and warranty, *i.e.*, that Schedule 3.14 of the APA – which listed Beam's historical net sales for the Acquired Brands, along with the total number of cases of the Acquired Brands shipped to distributors, for the years 2009 through 2011 and for the trailing twelve month period that ended on October 31, 2012 – was "true, complete and accurate in all material respects."  (SOF ¶ 10.)  Despite months of discovery, Luxco has failed to come forward with any "definite, competent evidence" – as opposed to mere opinions and conjecture – from which the finder of fact (here, the Court) could find in Luxco's favor.  *See Northern Illinois Telecom*, 2014 WL 4244069, at *5 (granting summary judgment in favor of defendant where plaintiff failed to offer competent evidence to support its claims).

### A.  Luxco Has Failed to Offer Any Competent Evidence Demonstrating That Schedule 3.14 Is Not "True" and "Accurate" in "All Material Respects"

Luxco has offered no competent evidence showing – and, indeed, does not appear to seriously contend – that the historical net sales and shipment data reflected in Schedule 3.14 was not "true" or "accurate."[6]  Nor does Luxco suggest that Schedule 3.14 was "incomplete" in any

---

[6] Luxco's conclusory assertion that it disputes the accuracy of the data in Schedule 3.14 █████████████████████████████████████████████████████████ does not satisfy Local Rule 56.1(b)'s requirements.  *See* L.R. 56.1(b)(3)(C) (requiring the non-moving party to cite, in the case of any disagreement, "*references to the affidavits, parts of the record, and other supporting materials relied upon*.") (emphasis added).  Nor does the "e.g." cite to Mr. Bratcher's deposition transcripts create a genuine dispute, █████████████████  *See Northern Illinois Telecom*, 2014 WL 4244069, at *5 (finding plaintiff's conclusory testimony without supporting record evidence insufficient to create a genuine dispute of material fact as to the plaintiff's breach of contract claim).

traditional sense, such as, for instance, by failing to include some category of sales or cases shipped that should have been reflected. Rather, as noted above, Luxco's Section 3.14 claim hinges on the argument that the inclusion of the word "complete" to describe the historical data reflected in Schedule 3.14 somehow imposed upon Beam a broad ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ )[7] This argument is baseless, as

demonstrated below.

**B. Luxco's Proffered Interpretation of the Term "Complete" As Used to Describe the Data Reflected in Schedule 3.14 is Both Unreasonable and Directly Refuted by the Relevant Extrinsic Evidence**

The only reasonable and ordinary interpretation of the word "complete," as used in Section 3.14, is that the net sales and case shipment figures reflected in Schedule 3.14 are not missing any data pertaining, for instance, to one or more of the Acquired Brands, a particular time period and/or a particular geographic region. *See Cont'l Indus. Capital, LLC v. Lightwave Enters., Inc.*, 85 A.D.3d 1639, 1640, 925 N.Y.S.2d 301, 303 (2011) (when construing contracts, "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought.").

This interpretation is bolstered by the APA's express disclaimer of any and all other warranties not expressly set forth in the agreement and by the APA's unambiguous merger and integration clause. (SOF ¶¶ 11.) *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 379 (S.D.N.Y. 2010) (granting summary judgment where the APA, which included "an

---

[7] Luxco appears to have abandoned its theory that Beam's use of "Entity Grants" somehow constituted a breach of the APA. (*See, e.g.*, FAC ¶¶ 26-27.) As the undisputed evidence confirms, ███████████ ████████████████████████████████████████████████████████████████

express integration clause," contained no "specific language" relating to "sales support or marketing support," the subject matter of the alleged breach); *KB Dissolution*, 2010 WL 1379789, at *1-2 (dismissing breach of representation and warranty claim against seller where "the APA contains no representations or warranties with respect to" the alleged nondisclosure on which the buyer's claim was based and "expressly disclaim[s] the existence of any representation and warranty except those set forth in [the APA]").[8]

Not surprisingly, Luxco cites no authority to support its novel and expansive competing interpretation of the language in Section 3.14, and instead relies on inapposite "omissions" case law in the fraud context to support its "duty to disclose" theory. (Luxco Opp. at 20.) Obviously, the fact that a defendant in a fraud case may, under some circumstances, have a duty to disclose certain facts is completely irrelevant to the interpretation of contractual language to determine the scope and extent of an express representation and warranty in the context of a breach of contract claim.[9]

Tacitly recognizing that it is on shaky ground here, Luxco quickly resorts to suggesting – for the first time in this case – that Section 3.14 is at least "ambiguous" in this regard and that this purported ambiguity renders summary judgment unavailable. (Luxco Opp. at 19, n.20.) Not

---

[8] Luxco's attempt to distinguish these cases based on the specific underlying facts involved (Luxco Opp. at 22-23) is unavailing and does nothing to alter the key takeaway – that courts consistently reject breach of representation and warranty claims where, as here, the challenged provision does not expressly mention the subject matter of the undisclosed facts on which the alleged breach is based and the agreement contains an express merger and integration clause disclaiming any and all other representations, warranties and understandings.

[9] Luxco also includes a lengthy, but wholly irrelevant, discussion of the word "material." (Luxco Opp. at 16-19.) Section 3.14 did not require Beam to provide all "material" information about the Acquired Brands to Luxco. To the contrary, the only mention of the word "material" in Section 3.14 ("in all material respects") is made in the context of *limiting* (not expanding) Beam's representation and warranty, such that if there were minor discrepancies in the accuracy or completeness of the data provided, Beam would not be in breach of Section 3.14. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (noting that "in all *material* respects" denotes a less onerous burden than "in *all* respects") (emphasis in original).

so. As a threshold matter, and as Luxco's cited authority makes clear, "[s]train[ing] the contract language beyond its reasonable and ordinary meaning," as Luxco does here, does not create an ambiguity. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). Moreover, it is well-settled that "a party may not defeat a motion for summary judgment by merely alleging that the contract is ambiguous." *Weiner v. Anesthesia Assoc. of W. Suffolk*, 203 A.D.2d 454, 455 (N.Y. App. Div. 1994). Rather, "[t]he party opposing summary judgment must also set forth the extrinsic evidence, in evidentiary form, upon which it relies to support the construction it urges." *Id.* "[W]here there is no extrinsic evidence that would support a resolution of the ambiguities in favor of the nonmoving party's case," summary judgment is appropriate. *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *Chock Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202, 204 (2d Cir. 1998) ("Notwithstanding the existence of contractual ambiguities, summary judgment may be granted if under any of the reasonable interpretations the moving party would prevail.").

Here, despite now suggesting that Section 3.14 is ambiguous, Luxco has failed to come forward with any extrinsic evidence supporting its proffered interpretation. Luxco's omission is not surprising, as the available extrinsic evidence relating to the negotiation of the APA directly refutes its position. Specifically, during the negotiation and drafting of the APA, Luxco's counsel sent a draft of the APA to Beam's counsel in which Luxco proposed adding the following express representation and warranty from Beam:

███████████████████████████████████████████████

████████████████████████ and, indeed, neither it, nor anything like it, was included in

the final, executed version of the APA.[10]   Indeed, for the avoidance of doubt on this score,

Section 3.20 of the final version of the APA made clear that:

> EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY
> ANCILLARY DOCUMENT, THE SELLER MAKES NO REPRESENTATIONS
> OR WARRANTIES OF OR CONCERNING THE PRODUCTS, THE ACQUIRED
> ASSETS OR THE ASSUMED CONTRACT AND HEREBY EXPRESSLY
> DISCLAIMS ALL IMPLIED WARRANTIES WITH RESPECT THERETO. . . .
> AND ALL REPRESENTATIONS AND WARRANTIES OTHER THAN THOSE
> SET FORTH IN THIS ARTICLE III, ARE HEREBY EXPRESSLY
> DISCLAIMED BY THE SELLER.

(SOF ¶ 11 (capitalized in original).)[11]

This evidence confirms that neither Beam nor Luxco intended or understood that Beam

was agreeing to undertake a broad duty to disclose all material facts relating to the Acquired

Brands – and Luxco has provided no extrinsic evidence that would support its contrary

interpretation.   Accordingly, even if the Court were to agree with Luxco that Section 3.14 is

ambiguous (and it is not), summary judgment in Beam's favor would still be appropriate.   *See*

*Topps*, 526 F.3d at 68 (even where court finds an ambiguity, it may nevertheless grant summary

judgment "if the ambiguities may be resolved through extrinsic evidence that is itself capable of

---

[10]   Although introduced for the first time in connection with Beam's reply papers, the Court may
nevertheless consider this evidence in deciding the instant motion given that Beam is merely responding
to arguments made for the first time in Luxco's Opposition. *See, e.g., Beck v. University of Wisconsin Bd.
of Regents*, 75 F.3d 1130, 1134 at n.* (7th Cir. 1996).

[11]   While Luxco tries mightily to paint the picture that Beam deliberately withheld available information
from Luxco during diligence, that is far from the reality. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

only one interpretation, or where there is no extrinsic evidence that would support a resolution of the ambiguities in favor of the nonmoving party's case"); *Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65, 72 n. 5 (2d Cir. 1999) (summary judgment may be granted "when the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law").

As courts have explained in rejecting breach of representation and warranty claims under similar circumstances:

> Had [the buyer] wished to have enforceable representations and warranties with respect to [particular issues that arguably impacted sales], it could have bargained for them or declined to proceed with the transaction if they had been refused. But there is no basis on which the Court may rewrite the contract that [the buyer] elected to sign.

*KB Dissolution*, 2010 WL 1379789, at *2. The same reasoning applies here. *See also DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) ("Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."); *id.* ("It is not the role of the courts to relieve sophisticated parties from detailed, bargained-for contractual provisions that allocate risks between them . . . ."); *Goodman Mfg. Co. v. Raytheon Co.*, No. 98 Civ. 2774, 1999 WL 681382, at *14 (S.D.N.Y. Aug. 31, 1999) ("Since the parties limited the warranties and representations that make up the Agreement, [the court] may not now change them but must instead hold [the buyer] to the deal it negotiated."); *Hartz Consumer Grp., Inc. v. JWC Hartz Holdings, Inc.*, 33 A.D.3d 555, 556 (N.Y. App. Div. 2006) (granting summary judgment in favor of seller where buyer "did not seek any written assurances in the Stock Purchase Agreement from . . . sellers regarding" issue later complained of).

C.  **Luxco Presents No Competent Evidence Demonstrating** ███████
███████████████ **Have Any, Let Alone a Material, Impact on the Net
Sales and Case Shipment Figures in Schedule 3.14**

Nor has Luxco come forward with any evidence – competent or otherwise – from which
the Court could find that ███████████████████████████ should have been, but
were not, reflected in the historical data included in Schedule 3.14.  As Luxco acknowledges, the
only data set forth in Schedule 3.14 was Beam's net sales to distributors and its net case
shipments to distributors.  (SOF ¶¶ 12-13.) ████████████████████ had
anything to do with this data, and Luxco presents no competent evidence to the contrary.



As noted
above, however, Schedule 3.14 pertains solely to Beam's sales and case shipments to its
distributors.  What happens next in the distribution chain – *i.e.*, between distributors and retailers
– has no bearing on *Beam's* reported net sales or case shipment figures, and, again, Luxco
presents no competent evidence demonstrating otherwise.[12]

Luxco likewise presents no evidence to substantiate its bald assertion that the ██

---

[12] ████████████████████████████████████
████████████████████████████████ As the authorities on which Luxco relies make clear, where a buyer
is aware of facts prior to closing that would purportedly render a representation and warranty false and the
buyer "got that knowledge from the seller," the buyer is deemed to have waived its right to enforce the
representation and warranty.  *See* Luxco Opp. at 22 (citing *Assured Guar. Mun. Corp. v. Flagstar Bank,
FSB*, 892 F. Supp. 2d 596, 604 (S.D.N.Y. 2012)).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████, and Luxco presents no concrete explanation

of how, why and where ████████████████████████████████████

      In short, although it generically claims that █████████████████████████

██████████████████████████████████ Luxco never

provides a plausible explanation as to how, let alone presents any competent evidence to back it

up.[13]  The supposed "factual support" that Luxco cites for this assertion is just as conclusory and

void of detail. ████████████████████████████████████████

████████████████████████████ █████████████████████████

██████████████████████████████████████████████████████

████████████ ██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████  This is obviously insufficient to meet Luxco's burden

on the instant motion.  *See Northern Illinois Telecom,* 2014 WL 4244069, at *5 (finding that

plaintiff's conclusory testimony that a contract existed, without supporting record evidence, was

insufficient to create a genuine dispute of material fact as to breach of contract claim); *see also*

*Johnson*, 325 F.3d at 901 ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit,

when a party must show what evidence it has that would convince a trier of fact to accept its

version of events.").

---

[13]  Indeed, if, as Luxco appears to suggest, Schedule 3.14 should have included a lower number of cases shipped corresponding to the same level of reported net sales number, this would have made the Acquired Brands (falsely) appear *more* profitable than they were.

[14] ███████████████████████████████████████████████████.

Because Luxco has not met its burden of coming forward with competent evidence from which the Court could find that the information in Schedule 3.14 is incomplete, inaccurate, or untruthful in a material respect, Beam is entitled to summary judgment on this claim.

## II. Beam Is Entitled to Summary Judgment on Luxco's Claim for Breach of Section 3.13 of the APA (Count II)

As is the case with Count I, there is no genuine dispute about the key facts relevant to the disposition of Luxco's Section 3.13 claim. To defeat summary judgment on this claim, Luxco must come forward with competent evidence from which the Court could find that the alleged event/effect constituting the purported MAE: (1) actually occurred between November 16, 2012 and January 31, 2013 (the "MAE Period" under the APA); (2) was "unforeseen," *i.e.*, "outside the contemplation of the parties at the time of the transaction" and "could not have been foreseen or guarded against in the contract"; *and* (3) "substantially threaten[ed] the overall earning potential" of the Acquired Brands "taken as a whole" in "a durationally-significant manner." *JC's E*, 1995 WL 555765, at *3; *IBP*, 789 A.2d at 68; (SOF ¶ 10). Luxco has failed to present evidence sufficient to prove any, let alone all, of these requirements, providing three independent bases on which to grant summary judgment in Beam's favor. *See IBP*, 789 A.2d at 68 (recognizing that it is the burden of the party asserting an MAE to prove that one has occurred); *Northern Illinois Telecom*, 2014 WL 4244069, at *5 ("If, after an adequate opportunity for discovery, 'the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her.'") (quoting *Modrowski*, 712 F.3d at 1167) (emphasis in original).

### A. Luxco Has Abandoned the MAE Theory Alleged in the FAC

Luxco's FAC alleged "on information and belief" that an MAE occurred when "certain key retail accounts" informed Beam – sometime during the MAE Period – that they intended to

cease purchasing certain of the Acquired Brands that had been reformulated. (FAC ¶¶ 37-39.) Despite numerous and lengthy depositions of retailers, distributors and Beam personnel, however, Luxco struck out in its effort to find factual support for this theory in discovery.

████████████████████████████████████████████████████████████████████

████████████████████████████████[15]), forcing Luxco back to the drawing board.

In its opposition to the instant motion, Luxco has now abandoned its original MAE theory in favor of a new one. As this Court has recognized, it is, of course, improper to raise a new theory of liability in response to a summary judgment motion. *See Silverman v. Motorola*, 772 F. Supp. 2d 923, 936 (N.D. Ill. 2011) (St. Eve, J.). Nevertheless, to the extent the Court is inclined to consider Luxco's newly-minted MAE theory, it too is deficient, as demonstrated below.

### B. Luxco's New MAE Theory Is Just as Baseless as the Original

Luxco's latest theory is that negative consumer and retailer reaction to the reformulation "reverberat[ed]" "throughout and beyond the warranty period," leading to a decline in sales on three of the thirteen Acquired Brands, and that this constituted an MAE in breach of Section 3.13 of the APA. (Luxco Opp. at 1, 24.) This theory fails for several independent reasons:

*First*, as previously noted, MAEs are "limited to events that were outside the contemplation of the parties at the time of the transaction" and that "could not have been foreseen or guarded against in the contract." *JC's E.*, 1995 WL 555765, at *3. That is decidedly not the case here, ████████████████████████████████████████████████████

---

[15] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  For this reason alone, the Court should grant summary

judgment in Beam's favor on Luxco's Section 3.13 claim.

*Second*, to the extent the purported MAE is based on a *pre*-closing decline in sales on the

Acquired Brands that had been reformulated, ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ By signing and closing with knowledge of the facts giving rise to the purported MAE, Luxco waived its right to pursue this claim. *See Assured Guar. Mun. Corp.*, 892 F. Supp. 2d at 604 (cited in Luxco Opp. at 22).

*Third*, any *post*-closing decline in sales is irrelevant to Beam's representation and warranty under Section 3.13, which, logically, is limited to MAEs, if any, that had occurred as of the time of closing. It defies logic to suggest that Beam breached this provision at closing based on a *future* MAE that would occur only upon a *future* drop in sales. In any event, Beam expressly and unequivocally disclaimed any representation or warranty as to the future profitability of the Acquired Brands, thereby barring any claim based on this theory. (SOF ¶ 11); *see Pacheco v. Cambridge Tech. Partners (Massachusetts), Inc.*, 85 F. Supp. 2d 69, 75-76 (D. Mass. 2000) (granting summary judgment where alleged "material adverse change," *i.e.*, declines in revenue growth rates, were "forward-looking" and there was no "warranty obligation" in the agreement regarding "future prospects"); *Goodman Mfg. Co.*, 1999 WL 681382, at *14 (dismissing claim premised on occurrence of alleged "material adverse change," where "thrust" of claim "clearly rest[ed] on the representation of future earnings or prospects of the Acquired Business," but the agreement made "no express or implied warranty as to future events" and "expressly disclaim[ed] any representations that [were] not contained in the Agreement").

*Finally*, in addition to the foregoing fatal deficiencies in its new MAE theory, Luxco has also failed to come forward with competent evidence demonstrating that a pre-closing decline in sales on the three Acquired Brands that had been reformulated "substantially-threatened the overall earning potential" of the thirteen Acquired Brands "taken as a whole" in a "durationally-significant manner." (SOF ¶ 10 (quoting APA Section 9.1); *IBP*, 789 A.2d at 68 (it is the burden

of the party asserting an MAE to prove that one has occurred); *see also Goodman v. Nat'l Sec. Agency, Inc*., 621 F.3d 651, 654 (7th Cir. 2010) (summary judgment is the "put up or shut up" moment where non-movant "is required to marshal and present the court with the evidence she contends will prove her case"); *Thompson*, 110 F. Supp. 3d at 837 ("Summary judgment will be granted against a party who does not 'come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question.'").[16] ████████████████████

████████████████████████████████████████████

████████████████████████████; *see Pittsburgh Coke & Chem. Co. v. Bollo*, 421 F. Supp. 908, 930 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 1089 (2d Cir. 1977) (finding no MAE because neither the target's "financial condition" nor its "business or operations" permanently changed); *Hexion Specialty Chemicals, Inc. v. Huntsman Corp*., 965 A.2d 715, 738 (Del. Ch. 2008) (an MAE exists only when the alleged change is proven to be material as "viewed from the longer-term perspective of a reasonable acquirer").

Although determining whether an MAE has occurred can, in some cases, present a genuine issue of material fact requiring a trial, here – given Luxco's complete failure to come forward with competent evidence that would allow the Court to find in its favor on this claim – it does not. *See, e.g., Pacheco*, 85 F. Supp. 2d at 76 (granting summary judgment where the change at issue was "immaterial as matter of law"); *S.C. Johnson & Son. Inc. v. DowBrands. Inc*., 167 F. Supp. 2d 657, 670 (D. Del. 2001) (granting summary judgment on a breach of representation and warranty claim where there was no material adverse change in the "operations, assets . . . or financial condition of the Business, taken as a whole," as the agreement required).

---

[16] *See also* R. 94, Beam's Memorandum of Law In Support of Its Motion for Summary Judgment at 22-24 (demonstrating that retailer discontinuances of reformulated brands did not substantially threaten the overall earning potential of the Acquired Brands in a "durationally-significant" manner.)

## III.     Beam Is Entitled to Summary Judgment on Its Counterclaim

The material facts relevant to Beam's counterclaim for breach of the TSA, a separate agreement from the APA, are likewise not in dispute.  Luxco's only defense to this claim is that it should be excused from its payment obligations under the TSA based on Beam's alleged breaches of the APA.  Because, as demonstrated above, Beam is entitled to summary judgment on both of Luxco's claims under the APA, it is, accordingly, also entitled to summary judgment on its counterclaim under the TSA.  Even if Luxco's claims were well-founded, however, Beam would still be entitled to summary judgment on its counterclaim given that it relates to an unrelated promise under a separate agreement.  *See* 13 Williston on Contracts § 39:2 (4th ed.) ("A party to a contract is not excused for nonperformance because the other party to the contract has breached a separate contract between them . . . ."); *see also, e.g., Pfizer, Inc. v. Stryker Corp.,* 348 F. Supp. 2d 131, 147-48 (S.D.N.Y. 2004); *Waters v. Glasheen*, 103 A.D.2d 1043, 1043 (N.Y. App. Div. 1984).

## CONCLUSION

As the foregoing makes clear, Beam's summary judgment motion is based on discrete and dispositive legal questions as to which there is no relevant factual dispute, let alone a material one.  Despite Luxco's attempts to muddy the waters through a voluminous submission, the reality is that only a handful of key, undisputed facts are material to the disposition of each of the three counts in this case.  Luxco may debate the legal significance of certain of these facts, but it does not genuinely dispute the key facts themselves.  This is not a case of conflicting

evidence that needs to be weighed at trial, nor is it a case where the credibility of key witnesses is at issue.  As such, summary judgment is appropriate on all counts.[17]

Dated: March 31, 2016                                        Respectfully submitted,

                                                            **WINSTON & STRAWN LLP**

                                                            By:  /s/ John E. Schreiber
                                                                 John E. Schreiber (Pro Hac Vice)
                                                                 Ian C. Eisner (Pro Hac Vice)
                                                                 333 South Grand Avenue
                                                                 Los Angeles, CA 90071-1543
                                                                 Telephone: (213) 615-1700
                                                                 Email:  jschreiber@winston.com
                                                                 Email:  ieisner@winston.com

                                                                 Gretchen Vetter Scavo
                                                                 Thomas G. Weber
                                                                 35 W. Wacker Drive
                                                                 Chicago, IL 60601-9703
                                                                 Telephone: (312) 558-5600
                                                                 Fax: (312) 558-5700
                                                                 Email:  gscavo@winston.com
                                                                 Email:  tgweber@winston.com

                                                            *Attorneys for Jim Beam Brands Co.*

---

[17]  Luxco's Opposition requests oral argument on Beam's motion.  (Luxco Opp. at 30.)  Although Beam believes that the issues to be decided are adequately set forth in the parties' papers, should the Court decide that oral argument would be helpful, Beam would welcome the opportunity.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 31, 2016, a true and correct copy of the foregoing MEMORANDUM IN FURTHER SUPPORT OF BEAM'S MOTION FOR SUMMARY JUDGMENT was electronically filed with the Court using the CM/ECF system, which will send a notice of filing to all counsel of record:

Michael R. Annis
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
mike.annis@huschblackwell.com

James P. White
Thomas M. Dee
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
james.white@huschblackwell.com
tom.dee@huschblackwell.com

Dated: March 31, 2016                              /s/ Thomas G. Weber