# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LUXCO, INC., | ) | |
| | ) | |
|     Plaintiff and Counterclaim-Defendant, | ) ) | Civil Action No. 1:14-cv-349 |
| | ) | Judge Amy J. St. Eve |
|   v. | ) ) | |
| JIM BEAM BRANDS CO., | ) ) | |
|     Defendant and Counterclaim Plaintiff. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF BEAM'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DAVID BRATCHER

Defendant and counterclaim-plaintiff Jim Beam Brands Co. ("Beam") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rules of Evidence 702 and 703, to exclude the putative expert damages testimony of David Bratcher, the current President and Chief Operating Officer ("COO") of plaintiff and counterclaim-defendant Luxco, Inc. ("Luxco").[1]

## INTRODUCTION

Luxco's only remaining claim against Beam in this case is for breach of an express representation and warranty in the Asset Purchase Agreement (the "APA") governing the sale of certain Beam brands (the "Acquired Brands") and associated intellectual property to Luxco in January 2013.[2] Specifically, Luxco claims that Beam breached Section 3.14 of the APA, which

---

[1] Mr. Bratcher's expert report, dated September 29, 2015 (the "Bratcher Report"), is attached as Ex. A to the accompanying declaration of Thomas Weber ("Weber Decl."). The transcript of Mr. Bratcher's expert deposition, taken on December 10, 2015 ("Bratcher Expert Dep."), is attached to the Weber Decl. as Ex. B.

[2] The APA (including relevant schedules thereto) is attached to the Weber Decl. as Ex. C.

1

provided that certain data in an attached schedule reflecting Beam's historical net sales and case shipments to its distributors for the Acquired Brands was "true, complete and accurate in all material respects."[3] The APA is governed by New York law. *See* APA Section 10.8; R. 126, Memorandum Opinion and Order at 8.

Under New York law, the measure of damages for a successful breach of representation and warranty claim is "the difference between the value of [the asset] as warranted by [the seller] and its true value at the time of the transaction." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (describing this as a "benefit of [the] bargain" measure of damages) (applying New York law); *see also Powers v. Stanley Black & Decker, Inc.*, 137 F. Supp. 3d 358, 386 (S.D.N.Y 2015) (equating "true value" with "market value" for these purposes) (citations omitted). To carry its burden, the plaintiff must put on evidence demonstrating "how [the asset] would have been valued by knowledgeable investors at the time of the sale were such investors aware of any breaches proved by [the purchaser]." *Merrill Lynch*, 500 F. 3d at 185. This is indisputably an objective standard. *Id.* (explaining that the purchaser must demonstrate that the alleged "breach resulted in a diminution in the *objective* value of the [asset] at the time of the sale") (emphasis added). For obvious reasons, the purchaser's own subjective "say so" about how much less it hypothetically would have paid had it known certain facts is insufficient. *See id*; *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 60 (2d Cir. 1984) (applying New York law) (benefit of the bargain damages "must be based on the bargain that was actually struck, not on a bargain whose terms must be supplied by hypotheses about what

---

[3] Luxco claims that Beam breached this provision because the "reported sales numbers" reflected in Schedule 3.14 allegedly "failed to disclose or account for" (i) certain "marketing supports" and discounts that three independent distributors of the Acquired Brands provided – at their own expense – in order to promote their own sales of the products to retailers, and (ii) Beam's decision in March 2012 to forego imposing certain contractual penalties against one of its distributors for failing to meet state-specific sales targets with respect to the Wolfschmidt brand. *See* Bratcher Report at 2, 4-5.

the parties would have done if the circumstances surrounding their transaction had been different").

Rather than retain an independent expert to conduct the required objective valuation analysis described above, Luxco instead submitted an "expert" damages report from its own President and COO, Mr. Bratcher, who offers nothing more than his own subjective opinion that Luxco "would have" lowered its purchase price by millions of dollars had it been aware of certain allegedly undisclosed facts at the time of the transaction. *See* Bratcher Report 5-7.[4] Mr. Bratcher has confirmed that, in preparing his report, he did not attempt to apply, nor even take into account, the applicable measure of damages under New York law, and, in fact, he received no instruction whatsoever in this regard. Bratcher Expert Dep. at 14-15. Rather, he explained, he simply "calculated the damages based on what I feel our price would have been had we known all the information at that time." *Id.* at 16.

As demonstrated below, Mr. Bratcher's putative expert opinions are inadmissible for two independent reasons: (i) they do not comport with the applicable measure of recovery under New York law and are, therefore, irrelevant, unreliable and of no assistance to the trier of fact; and (ii) even if that were not the case, Mr. Bratcher fails to provide any meaningful explanation – let alone reliable methodology – to support his "bottom-line," subjective conclusions. *See, e.g.*, *System Dev. Integration, LLC v. Computer Sciences Corp. ("SDI")*, 886 F. Supp. 2d 873, 879 (N.D. Ill. 2012) (St. Eve, J.) (excluding certain expert damages opinions on both bases) (citing *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806, 818 (N.D. Ill. 2005)

---

[4] Mr. Bratcher is also one of Luxco's primary fact witnesses, having played a central role in the negotiations and diligence relating to the transaction. He was deposed as a fact witness on August 14, 2015. Relevant portions of the transcript of Mr. Bratcher's deposition as a fact witness are attached to the Weber Decl. as Ex. D ("Bratcher Fact Witness Dep.").

3

(Cole, M.J.) (same)). For these reasons, Mr. Bratcher's putative expert opinions should be excluded from the trial.

## THE BRATCHER REPORT AND RELATED DEPOSITION TESTIMONY

Luxco submitted the Bratcher Report to Beam on September 29, 2015.[5] In it, Mr. Bratcher identifies three categories of alleged non-disclosures that he claims (i) constitute purported breaches of Section 3.14 of the APA, and (ii) would have, if known at the time of the transaction, purportedly led Luxco to reduce its purchase price by some $9.5 million dollars. Bratcher Report at 7.[6] Mr. Bratcher contends that Luxco is entitled to recover the full amount of this hypothetical purchase price reduction as damages in this case. *See id* at 3, 7.

The alleged non-disclosures discussed in the Bratcher Report relate to:

(1) <u>Local Marketing Funds ("LMFs")</u> (Bratcher Report at 4-5) – As explained in the expert report of Martin A. Jones (the "Jones Report"), a long-time industry executive,[7] LMF are funds that certain independent distributors of the Acquired Brands set aside for marketing and price support to promote *their own sales* of the products to retailers (as distinct from Beam's front end sale of the products to distributors).[8] *See* Jones Report at 13. LMFs are common in the industry. *Id*. at 13-14. Because LMFs are funded by distributors (not Beam) and relate only to

---

[5] Mr. Bratcher estimated that he spent approximately 10-15 hours total fulfilling his expert duties, approximately two hours of which were devoted to writing his report. Bratcher Expert Dep. at 10-11.

[6] Mr. Bratcher devotes five pages of his thirteen-page report to a discussion of purported damages based on Luxco's erstwhile claim for breach of Section 3.13 of the APA relating to Beam's reformulation of certain of the Acquired Brands prior to the closing of the transaction. Bratcher Report at 8-12. On June 6, 2016, this Court granted summary judgment in Beam's favor on that claim, and the parties agree that the sections of the Bratcher Report discussing purported damages arising therefrom (Sections II and III) are moot.

[7] The Jones Report is attached as Exhibit E to the Weber Decl.

[8] As explained in the parties' summary judgment briefing, a three-tier distribution system is used in the sale of alcoholic beverages in this country: suppliers (like Beam and Luxco) sell to distributors, and distributors in turn sell to retailers. *See* R. 115-1, Beam's Response to Luxco's Additional Statement of Facts ¶ 125; *see also* R. 102, Luxco's Opposition to Beam's Motion for Summary Judgment at 1, n.1. Suppliers such as Beam and Luxco do not sell – and indeed are prohibited by law from selling – directly to retailers.

distributors' sales to retailers (not Beam's sales to distributors), they are, wherever applicable, naturally reflected in the distributor's (not Beam's) profit and loss statement. *See id*. LMFs therefore have no impact on Beam's reported net sales numbers reflected in Schedule 3.14. *Id*. at 14. Nevertheless, Mr. Bratcher now claims, without meaningful explanation, that "[h]ad the [distributors'] LMF funding been disclosed to Luxco," Luxco "would have" substantially reduced its purchase price. Bratcher Report at 5.

(2) "Wolfschmidt Credits" (Bratcher Report at 5-6) – This refers to two instances in March 2012 in which Beam decided to forego imposing contractual penalties on one of its distributors for failing to meet state-specific sales targets with respect to the Wolfschmidt brand. Here again, although no money exchanged hands and the credits have absolutely no impact on Beam's sales figures reflected in Schedule 3.14, Mr. Bratcher claims, without meaningful explanation, that "[h]ad the credits been disclosed to Luxco," Luxco "would have" substantially reduced its purchase price. *Id*.

(3) "Free goods" (Bratcher Report at 6-7) – "Free goods" are a form of discount that independent distributors of Beam products choose, from time to time, to offer to the retailers with whom they contract. An example includes a situation in which a distributor offers a retailer one free case for every ten it buys. Jones Report at 12. As Mr. Bratcher acknowledges, the source of funding for such "free goods" for the Acquired Brands, where applicable, was either (a) LMFs (again, a distributor's own funds, the full amount of which is already included elsewhere in Mr. Bratcher's damages calculation), or (b) Beam "entity grants," which were, as Mr. Bratcher acknowledges, already "netted out" of Beam's reported sales numbers in Schedule 3.14 and therefore are not at issue in this case. Bratcher Fact Witness Dep. at 99:12-100:15,

5

104:3-6, 108:6-9.[9]  Nevertheless, Mr. Bratcher claims, again without meaningful explanation, that "[h]ad the free goods activity" been disclosed to Luxco, Luxco "would have" reduced its purchase price still further. Bratcher Report at 6-7.

At his expert deposition, Mr. Bratcher testified that he was unaware of the applicable measure of damages under New York law; that he received no instruction whatsoever in this regard; and that his report is based solely on the purported damages that he personally "felt" Luxco had suffered. *See* Bratcher Expert Dep. at 14-15 (confirming that he was not "told to consider, [and did not] assume anything about New York law and how the law views the calculation of damages") *id*. at 13 ("[m]y damages report here is – was strictly based on *what I felt Luxco suffered* as a result of not getting all the information") (emphasis added); *id.* at 16 ("Again, I calculated the damages based on what *I feel our price would have been* had we known all the information at that time.") (emphasis added).[10]

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact[,] . . . a witness

---

[9] "Entity grants" are funds Beam provided to its distributors to support the distributor's sales of Beam brands. Jones Report at 11-12. Distributors use entity grants for a variety of purposes, including but not limited to "free goods." *Id.* Such programs are common in the industry and were fully disclosed to Luxco prior to the closing. It is undisputed that the total amount of entity grant funding that Beam provided to distributors with respect to each of the Acquired Brands during the relevant time frame was deducted from Beam's reported gross sales – *i.e.*, "netted out" – before arriving at the reported net sales figures reflected in Schedule 3.14. R. 103, Luxco's Responses to Beam's Statement of Facts ¶ 24.

[10] Mr. Bratcher also confirmed that his damages opinions did not take into account the APA's express limitations on the types and amount of damages available for a breach of representation and warranty claim. Bratcher Expert Dep. at 15-18; APA Sections 8.2(a), (g); 3.20.

qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion . . . ." *Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 824 (7th Cir. 2010). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis,* 561 F.3d at 705; *Sanders v. City of Chicago Heights,* No. 13 C 0221, 2016 WL 1730608, at *3 (N.D. Ill. May 2, 2016) (St. Eve, J.).

"Under the expert-testimony framework, courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable." *Fife v. mPhase Tech., Inc.*, 12 C 9647, 2014 WL 2514565, at *2 (N.D. Ill. June 4, 2014) (St. Eve, J.) (citing *Lewis*, 561 F.3d at 705). To qualify under this standard, the expert must, among other things, set forth a methodology that is "reasoned and founded on data [and] must also utilize the methods of the relevant discipline." *Hannah's Boutique, Inc. v. Surdej*, No. 13-CV-2564, 2015 WL 4055466, at *2 (N.D. Ill. July 2, 2015) (St. Eve, J.) (quoting *Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011)); *see also Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013).

Naturally, expert opinions that do not comport with the applicable legal standard are inadmissible. *See Loeffel*, 387 F. Supp. 2d at 806 (explaining that such opinions "cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact"); *see also SDI*, 886 F. Supp. 2d at 879 (excluding expert damages opinions that did not comport with the measure of recovery under applicable law); *Hannah's Boutique*, 2015 WL 4055466, at *4-5 (same). Courts are likewise to exclude testimony that is based on "subjective belief or unsupported speculation." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) ("A court is expected to

7

reject 'any subjective belief or speculation.'") (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)).

As demonstrated below, Mr. Bratcher's purported expert testimony does not come close to satisfying the foregoing standard and should be excluded.

**ARGUMENT**

**I.  Mr. Bratcher's Opinions Are Inadmissible Because They Do Not Comport With The Applicable Measure Of Damages Under New York Law**

As noted above, the correct measure of damages under New York law for a breach of representation and warranty claim is "the difference between the value of [the asset] as warranted by [the seller] and its true value at the time of the transaction." *Merrill Lynch*, 500 F.3d at 185 (describing this as a "benefit of [the] bargain" measure of damages). This is an objective standard that requires the court to "determine how [the asset] would have been valued by knowledgeable investors at the time of the sale were such investors aware of any breaches proved by [the purchaser]." *Id.* (purchaser must demonstrate that alleged "breach resulted in a diminution in the *objective* value of the [asset] at the time of the sale") (emphasis added); *see also Crown Cork & Seal Co., Inc. Master Retir. Trust v. Credit Suisse First Boston Corp.*, Nos. 12–cv–05803-05–JLG, 12–cv–07263-64–JLG, 2013 WL 978980, at *12 (S.D.N.Y. March 12, 2013) (ascertaining "true value" requires an "objective determination"); *Powers*, 137 F. Supp. 3d at 386 (equating "true value" of asset with its "market value" for purposes of this test).

The purchaser's own subjective "say so" about how much less it hypothetically would have paid had it known certain facts at the time of the transaction – which is all Mr. Bratcher offers here – is obviously, and for good reason, insufficient under this test. *See id.* As courts have long held, "[a] claim for benefit-of-the-bargain damages," such as Luxco asserts here, "must be based on the bargain that was actually struck, not on a bargain whose terms must be

8

supplied by hypotheses about what the parties would have done if the circumstances surrounding their transaction had been different." *Barrows*, 742 F.2d 54 at 60 (rejecting damages claim based on party's assertions about what it "would have done" had it known certain facts at the time of the transaction as both "speculative" and potentially leading to a "windfall").

Yet, as summarized below, such "hypotheses" about what Luxco "would have" done are all Mr. Bratcher offers here:

- "Had the [distributors'] LMF funding been disclosed to Luxco, Luxco would have reduced . . . [the] purchase price" (Bratcher Report at 5);

- "Had the [Wolfschmidt] credits been disclosed to Luxco, Luxco would have reduced . . . [the] purchase price" (*id*.);

- "Had the free goods activity . . . been disclosed by Beam, Luxco would have reduced . . . the purchase price" (*id*. at 7);

- "Again, I calculated the damages based on what *I feel our price would have been* had we known all the information at that time" (Bratcher Expert Dep. at 16);

- Confirming that he was not attempting to apply – and was not even aware of – the applicable measure of damages under New York law (*id*. at 14-15).

Because Mr. Bratcher's opinions do not comport with the objective measure of recovery under applicable law, they are inadmissible. *See SDI*, 886 F. Supp. 2d at 878-79 (excluding expert damages opinion that did not comport with measure of recovery under applicable law) (citing *Loeffel*, 387 F. Supp. 2d at 806 (same)). As Magistrate Judge Cole explained in excluding expert damages testimony under similar circumstances in *Loeffel*, expert opinions that are inconsistent with the applicable law "cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact" and, as such, are "inadmissible." 387 F. Supp. 2d at 806; *see also Hannah's*, 2015 WL 4055466, at *2 (excluding expert opinion that did not comport with applicable law); *Jackson v. Nat'l Action Fin. Servs, Inc.*, 441 F. Supp. 2d 877, 880 (N.D. Ill.

2006) (Castillo, J.) (same).[11]  Indeed, like the proffered damages expert in *Loeffel*, what Mr. Bratcher offers here "is not an expert opinion, but rather a personal opinion about what [damages he] believes should apply in this case." *Loeffel*, 387 F. Supp. 2d at 806 (internal quotation marks omitted).  His opinions should, accordingly, be excluded.

## II.  Mr. Bratcher Provides No Reliable Methodology To Support His "Bottom-Line" Conclusions

Mr. Bratcher's opinions should be excluded for a second, independent reason: even if his opinions were consistent with the applicable measure of damages under New York law (and they are not), they would still be inadmissible because he fails to offer any meaningful explanation – let alone reliable methodology – to support his subjective, bottom-line conclusions.  *Loeffel*, 387 F. Supp. 2d at 817 ("*Daubert* requires that trial judges must ensure that any and all expert testimony is not only relevant but reliable," which requires "look[ing] behind the expert's ultimate conclusion and analyz[ing] the adequacy of its foundation"); *Fife*, 2014 WL 2514565, at *3 (a court's primary "focus" in "assessing the admissibility of an expert's testimony" is on the "principles and methodology" underlying the proffered opinions).

In his report, Mr. Bratcher merely describes the process by which Luxco ostensibly arrived at its actual purchase price for the Acquired Brands (Bratcher Report at 1) and then sets forth a bottom-line number of cases and corresponding dollars by which he claims Luxco "would have reduced" its calculation had it been aware of the allegedly undisclosed facts at the time of the transaction.  *See* Bratcher Report at 5 ("Had the [distributors'] LMF funding been disclosed

---

[11] *Accord BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. CIV. 06-1076 MCA/LFG, 2009 WL 4279771, at *5 (D.N.M. Feb. 12, 2009) (excluding expert opinions that were "based on an erroneous understanding of the state of the law and, therefore, would not assist the jury"); *Southard v. United Reg'l Health Care Sys., Inc.*, Civ. A. No. 7-06-11, 2008 WL 4489692, at *2 (N.D. Tex. Aug. 5, 2008) ("[W]here as here, the expert's opinion is based on an erroneous legal premise, it is appropriate to exclude such testimony."); *Malletier v. Dooney & Burke, Inc.*, 525 F. Supp. 2d 558, 572-73 (S.D.N.Y. 2007) (excluding expert testimony where it did not fit within applicable substantive law).

to Luxco, Luxco would have reduced the reported number of shipped cases and thus the brands' contribution to margin in the Brand Detail Sheet substantially, resulting in a decreased purchase price."); *id*. ("Had the [Wolfschmidt] credits been disclosed to Luxco, Luxco would have reduced its calculation of shipped cases and Beam's report of Wolfschmidt vodka's contribution to margin substantially, resulting in a lower purchase price."); *id*. at 7 ("Had the free goods activity . . . been disclosed by Beam, Luxco would have reduced the shipment and brand contribution numbers, as reflected in Table 3, significantly reducing the purchase price.").

Mr. Bratcher provides no meaningful explanation as to why knowledge of either (i) funding (LMFs) and discounts ("free goods") that *Beam's distributors'* provided, at their *own* expense, to promote their *own* sales of the products to retailers, or (ii) Beam's decision, in two instances in 2012, to forego enforcing contractual penalties against one of its distributors for failing to meet sales targets for Wolfschmidt in two states (the so-called "Wolfschmidt credits") would have caused Luxco – let alone an objective "knowledgeable investor" – to so substantially reduce the valuation of the Acquired Brands. Nor does any such contention even make sense, since none of the allegedly undisclosed facts had, or ever would have, any bearing on *Beam's* reported net sales (or case shipment) numbers on which Luxco's purchase price was ostensibly based. *See* Bratcher Report at 1; Bratcher Expert Dep. at 21-23 (explaining that Luxco based its purchase price calculation on Beam's reported net sales figures).

Mr. Bratcher's "unsupported, 'bottom-line' conclusion is insufficient to meet Rule 702's standard for admissibility of expert testimony." *SDI*, 886 F.2d at 879-80 (excluding damages opinion where expert "provides no analysis, or citation to any reliable basis, in support of his opinion" and "does not articulate any reliable principle or reasoning to support his conclusion")

(citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 (1997)). As the Seventh Circuit has explained:

> [A]n expert's report that does nothing to substantiate [an] opinion is worthless, and therefore inadmissible. . . . An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.

*Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997); *see also Loeffel*, 387 F. Supp. 2d at 817-18 (excluding "bottom line" expert damages opinion as "unreliable and speculative" and offering "nothing of value to the judicial process").

To be clear, whether or not Mr. Bratcher is sincere in his claims about what Luxco "would have" done under different circumstances is beside the point. As this Court explained in *Sloan Valve Co. v. Zurn Indus., Inc.*, which also involved a party's attempt to designate one of its own employee's as a damages expert:

> The Court does not doubt [the employee-expert's] conviction in his belief, but conviction alone cannot take the place of the reliable methodology that he lacks.

No. 10-CV-00204, 2014 WL 806452, at *5 (N.D. Ill. Feb. 28, 2014) (St. Eve, J.) (citing *United States v. Hall,* 165 F.3d 1095, 1102 (7th Cir. 1999)) (finding that when considering expert testimony, a court "must rule out subjective belief or unsupported speculation")); *see also Chiriboga v. Nat'l R.R. Passenger Corp.*, No. 08 C 7293, 2011 WL 2295281, at *3-5 (N.D. Ill. June 9, 2011) (Kocoras, J.) (excluding expert opinions that were "not the product of reliable principles and methods" because they "provide[d] nothing more than speculative possibilities about what [an individual] might or might not have done" under different circumstances); *Jackson*, 441 F. Supp. 2d at 879 (expert testimony "based on subjective belief or unsupported speculation" is inadmissible) (internal quotation marks omitted).

Because Mr. Bratcher's opinions are devoid of any reliable methodology, they should be excluded.[12]

## CONCLUSION

For the reasons set forth above, Beam respectfully requests that the Bratcher Report and related testimony be excluded.

Dated: July 7, 2016              Respectfully submitted,

                       **WINSTON & STRAWN LLP**

                       By: /s/ John E. Schreiber
                         John E. Schreiber (Pro Hac Vice)
                         Ian C. Eisner (Pro Hac Vice)
                         333 South Grand Avenue
                         Los Angeles, CA 90071-1543
                         Telephone: (213) 615-1700
                         Email: jschreiber@winston.com
                         Email: ieisner@winston.com

                         Gretchen Vetter Scavo
                         Thomas G. Weber
                         35 W. Wacker Drive
                         Chicago, IL 60601-9703
                         Telephone: (312) 558-5600
                         Fax: (312) 558-5700
                         Email: gscavo@winston.com
                         Email: tgweber@winston.com

                         *Attorneys for Jim Beam Brands Co.*

---

[12] Mr. Bratcher, who states that he had "primary responsibility" for negotiating the Transition Services Agreements (or TSA), also opines that the "true-up" payment that Luxco is required to make to Beam should be declared "null and void." Bratcher Report at 12-13. This is an impermissible legal opinion that should also be excluded. *RLJCS Enter., Inc. v. Prof'l Ben. Trust Multiple Emp'r Welfare Ben. Plan & Trust,* 487 F.3d 494, 498 (7th Cir. 2007); *Fife*, 2014 WL 2514565, at *5.

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on July 7, 2016, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF BEAM'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DAVID BRATCHER was electronically filed with the Court using the CM/ECF system, which will send a notice of filing to all counsel of record:

>Michael R. Annis
>HUSCH BLACKWELL LLP
>190 Carondelet Plaza, Suite 600
>St. Louis, Missouri 63105
>mike.annis@huschblackwell.com
>
>James P. White
>Thomas M. Dee
>HUSCH BLACKWELL LLP
>120 South Riverside Plaza, Suite 2200
>Chicago, IL 60606
>james.white@huschblackwell.com
>tom.dee@huschblackwell.com

Dated: July 7, 2016                                /s/ Thomas G. Weber